**JOHN P. AGNEW & CO., Inc., et al. v HOAGE, Deputy Com'r, U. S. Employees' Compensation Commission.**

**No. 6965.**

United States Court of Appeals for the District of Columbia.

Decided June 30, 1938.

**350**

Ringgold Hart, of Washington, D. C., for appellants.

David A. Pine, U. S. Atty., and Allen J. Krouse, Asst. U. S. Atty., both of Washington, D. C., for appellee.

Before GRONER, Chief Justice, and STEPHENS, MILLER, and EDGERTON, Associate Justices.

STEPHENS, Associate Justice.

This is an appeal from an order of the District Court of the United States for the District of Columbia granting a motion by the appellee to dismiss a bill in equity filed by the appellants.

The allegations in the bill were, in substance and effect, that: The appellants are coal dealers doing business in the District of Columbia; the appellee is Deputy Commissioner of the United States Employees' Compensation Commission for the District of Columbia. The appellee "In the administration of his office" rendered an "opinion" regarding "coal hustlers" as follows:

*"Coal Hustlers*

"A coal 'hustler' is understood to be a person employed to carry coal, unloaded by the coal dealer, to the consumer's coal bin. The source of his engagement and payment of compensation usually will determine his status as an employee. If employed and paid by the consumer (although the latter may ask the coal dealer to select and send the man) he is engaged in employment that is casual as to the consumer and not in the usual course of business of the latter, and is not an employee under the District of Columbia Workmen's Compen-

sation Act. If employed and paid by the coal dealer by whom he is engaged he is covered by the Act as an 'employee' although the dealer may charge the cost to the consumer."

"Coal hustlers" are not employed by appellants but by appellants' customers, and in the dealings between the "hustlers" and the appellants, the latter act only as the agents of the customers. The opinion of the appellee, so far as it states that "If employed and paid by the coal dealer by whom he [a coal hustler] is engaged he is covered by the Act as an 'employee' although the dealer may charge the cost to the consumer," is erroneous and is causing great pecuniary loss to the appellants since they "are required to carry compensation insurance upon said hustlers."

Upon these allegations the bill prays for a declaratory judgment "that a coal hustler, being a person employed to carry coal, unloaded by the coal dealer, to the consumer's bin, is not such an employee of said coal dealer as is required to be covered and protected by the insurance necessary to be carried by employers under the provisions of the District of Columbia Workmen's Compensation Act, [D.C.Code (1929) tit. 19, §§ 11, 12, 33 U.S.C.A. § 901, note; 33 U.S.C.A. § 901 et seq.,] although the dealer, at the request of his customer, obtains for such customer the services of a coal hustler, and, at the request of such customer, advances for such customer, and charges to his account, the sum earned by the coal hustler in carrying coal, delivered by the dealer, to the bin of the·customer."

The motion to dismiss, summarized, embodied two grounds: (1) that the bill reveals no "actual controversy" between the parties as required by the Federal Declaratory Judgment Act; (2) that the only jurisdiction that the trial court has in compensation matters is over compensation orders where the deputy commissioner either grants or denies compensation in a particular case to an allegedly injured employee, and the instant case.does not involve such an order. In sustaining the motion to dismiss the trial court ruled in favor of the appellee on both of these grounds. It will be necessary, however, to discuss only the first in this opinion, and we make no ruling upon the second.

We think the trial court correctly granted the motion to dismiss. The Declaratory Judgment Act, 48 Stat. 955, as amended, 49 Stat. 1027, 28 U.S.C. § 400

(1934), 28 U.S.C.A. § 400, provides, so far as here material:

"In cases of actual controversy . . . the courts of the United States shall have power upon petition, declaration, complaint, or other appropriate pleadings to declare rights and other legal relations of any interested party petitioning for such declaration, whether or not further relief is or could be prayed, and such declaration shall have the force and effect of a final judgment or decree and be reviewable as such."

The Act "does not attempt to change the essential requisites for the exercise of judicial power. By its terms, it applies to 'cases of actual controversy,' a phrase which must be taken to connote a controversy of a justiciable nature, thus excluding an advisory decree upon a hypothetical state of facts." Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 325, 56 S.Ct. 466, 473, 80 L.Ed. 688, 1936.

█ The bill of complaint in the instant case sets forth no "actual controversy" within the meaning of the Federal decisions defining that phrase. It sets forth at best a difference of opinion between the appellants and the appellee. It is not alleged that the appellee has taken, or that he intends to take, action harmful to the appellants. While it is alleged generally that the appellants are by reason of the opinion "required to carry compensation insurance," it is not asserted that the appellee is imposing or threatening to impose this requirement, nor is it made to appear that under the Employees' Compensation Act he has authority so to do. There is furthermore no allegation that the appellee has made any claim that his opinion is being disregarded by any of the appellants or that the appellants have ever been in violation of the law as set forth in the opinion—even before its issuance. In United States v. West Virginia, 295 U.S. 463, 55 S.Ct. 789, 79 L.Ed. 1546, 1935, the United States, in its bill of complaint, alleged that the New and Kanawha rivers running through West Virginia were one continuous interstate stream constituting navigable waters of the United States, that the United States had built dams on the Kanawha River for the purpose of improving navigation and was engaged in construction work on additional dams thereon and had in contemplation construction of a reservoir on the New River for the purpose of flood control, production of power, and in aid of navigation; that the corporate defendants, to wit, certain power companies, with the permission of the State of West Virginia, were building a dam upon the New and Kanawha rivers at Hawks Nest which would obstruct navigation and that they were doing so without the consent of the appropriate Federal authorities; that the State of West Virginia challenged the claim of the United States that the rivers were navigable and asserted that it had a right superior to that of the United States to license the use of the rivers for the production and sale of hydro-electric power and denied the right of the United States to require a license for the construction and operation of the power company dam. Sustaining motions to dismiss the bill, the Supreme Court said:

"But the bill alleges no act or threat of interference by the State with the navigable capacity of the rivers, or with the exercise of the authority claimed by the United States. . . . It alleges only that the State has assented to the construction of the dam by its formal permit, under which the corporate defendants are acting. There is no allegation that the State is participating or aiding in any way in the construction of the dam or in any interference with navigation . . .; or, indeed, that the State proposes to grant other licenses, or to take any other action in the future.

\* \* \*

". . . there is presented here, as respects the State, no case of an actual or threatened interference with the authority of the United States. *At most, the bill states a difference of opinion* between the officials of the two governments, whether the rivers are navigable and, consequently, whether there is power and authority in the federal government to control their navigation, and particularly to prevent or control the construction of the Hawks Nest dam. . . . *There is no support for the contention that the judicial power extends to the adjudication of such differences of opinion.* Only when they become the subject of controversy in the constitutional sense are they susceptible of judicial determination. See Nashville, C. & St. L. Ry. Co. v. Wallace, 288 U.S. 249, 259 [53 S.Ct. 345, 77 L.Ed. 730, 87 A.L.R. 1191]. Until the right asserted is threatened with invasion by acts of the State` . . . there is no question presented which is justiciable by a federal court. . . ." [Italics supplied] [295 U.S. at pages 472, 473, 474, 55 S.Ct. at pages 792, 793.]

See also Liberty Warehouse Co. v. Grannis, 273 U.S. 70, 47 S.Ct. 282, 71 L.Ed. 541, 1927; Willing v. Chicago Auditorium Ass'n, 277 U.S. 274, 48 S.Ct. 507, 72 L.Ed. 880, 1928.

Moreover, since all that the appellee has done, as alleged, is to render the "opinion" above set forth, there are not involved under the allegations of the bill sufficiently concrete issues for determination. The suggested "controversy" has not become sufficiently ripe and clarified to be the subject of a declaratory judgment. The appellants are apparently concerned over the asserted ruling in the last sentence of the opinion that "If employed and paid by the coal dealer by whom he [a coal hustler] is engaged he is covered by the Act as an 'employee' although the dealer may charge the cost to the consumer." And the appellants would have the court determine that this statement is erroneous. The statement itself is made upon a contingency, that is to say, it purports to rule that *if* a hustler is employed and paid by the coal dealer by whom he is engaged he is an employee covered by the Compensation Act notwithstanding that the dealer may charge the cost to the consumer. What determines whether a hustler is "employed" by the dealer is not stated in the "opinion." The most that is said is that "The source of his engagement and payment of compensation *usually* will determine his [a coal hustler's] status as an employee." (Italics supplied) If the appellants mean to ask the court to declare that no coal hustlers are the employees of coal dealers, that is too abstract a proposition for judicial determination. As was said in United States v. West Virginia, supra: *"General allegations that the State challenges the claim of the United States that the rivers are navigable, and asserts a right superior to that of the United States to license their use for power production, raise an issue too vague and ill-defined to admit of judicial determination."* (Italics supplied) 295 U.S. at page 474, 55 S.Ct. at page 793. If the appellants mean to ask a declaration that their particular coal hustlers are not their employees and need not be insured, no issue exists for such a ruling. The appellee's opinion does not say that the appellants' coal hustlers are their employees. In Ashwander v. Tennessee Valley Authority, supra, power company stockholders sought to set aside as invalid a contract between the company and the Authority, and they also asked a general declaratory decree with respect to the rights of the Authority in various relations. The Supreme Court said:

"We agree with the Circuit Court of Appeals that the question to be determined is limited to the validity of the contract of January 4, 1934. The pronouncements, policies and program of the Tennessee Valley Authority and its directors, their motives and desires, did not give rise to a justiciable controversy save as they had fruition in action of a definite and concrete character constituting an actual or threatened interference with the rights of the persons complaining. The judicial power does not extend to the determination of abstract questions. . . ." [297 U.S. at page 324, 56 S.Ct. at page 472.]

In Great Atlantic & Pacific Tea Co. v. Grosjean, 301 U.S. 412, 57 S.Ct. 772, 81 L.Ed. 1193, 112 A.L.R. 293, 1937, the Tea Company sought to enjoin the enforcement of the Louisiana chain store tax statute, which provided that "the tax 'shall be based on the number of stores or mercantile establishments included under the same general management . . ., whether operated in this State or not . . .'" Montgomery Ward & Company intervened, alleging that it had five stores in Louisiana, that it owned and operated also numerous mail order houses and order stations in other states which were engaged in interstate commerce, and that "the words 'mercantile establishments' used in said Act apparently include the aforesaid mail order houses and order stations. . . . Said Act does not by its terms exclude from its operation said establishments engaged in interstate commerce, and, therefore, violates the Commerce Clause of the United States Constitution. . . ." 301 U.S. at page 428, 57 S.Ct. at page 778. The Supreme Court dismissed the intervenor's bill as premature and without equity, saying:

"The record discloses no rules or regulations promulgated by the appellee Supervisor of Public Accounts and no ruling by any responsible state official as to which of Montgomery Ward & Company's establishments are to be included in reckoning the total of its retail stores. For all that appears neither its mail order houses, nor its order stations, nor its department stores, will be included in the computation.

"It is manifest that Montgomery Ward & Company cannot upon mere supposition that the Act will be unconstitutionally construed and applied in respect of its five

stores in Louisiana obtain an advisory decree that the Act must not be so administered as to burden or regulate interstate commerce." [301 U.S. at pages 429, 430, 57 S. Ct. at page 779.]

Similarly, the appellants cannot upon mere supposition that the appellee's opinion will be erroneously and illegally applied to their coal hustlers obtain an advisory decree that it must not be so applied.

Affirmed.