**HELCO PRODUCTS CO., Inc., v. McNUTT, Federal Security Adm'r, et al.**

No. 8344.

United States Court of Appeals for the District of Columbia.

Decided June 28, 1943.

Mr. Louis Halle, of New York City, with whom Messrs. Harry P. Warner and Philip J. Hennessey, Jr., both of Washington, D. C., were on the brief, for appellant. Mr. David E. Tolman, of Washington, D. C., also entered an appearance for appellant.

Mr. Edward B. Williams of the Bar of the State of Arkansas, of Washington, D. C., pro hac vice by special leave of Court, with whom Messrs. Edward M. Curran, United States Attorney, Charles B. Murray, Assistant United States Attorney, and Jack B. Tate, General Counsel, Federal Security Agency, all of Washington, D. C., were on the brief, for appellees. Messrs. Bernard J. Long, Assistant United States Attorney, and John P. Burke, Assistant United States Attorney, both of Washington, D. C., also entered appearances for appellees.

Before PARKER, Circuit Judge, sitting by designation, and MILLER and VINSON, Associate Justices.

MILLER, Associate Justice.

Appellant sued in the District Court for a declaratory judgment against the Federal Security Administrator and the Attorney General. The case stated in its complaint is, in substance, as follows: Appellant intends to ship in interstate commerce white poppy seeds, for use on bakery products, to which it intends to add a blue color by means of a harmless vegetable dye; the seed would be sold in bulk packages labeled with an explanation of the manner of coloring; the reason for the addition of the color is that blue poppy seeds are more in demand, but, on account of wartime restrictions of importations, are unavailable; appellant, through its attorney explained its intentions in a letter to the Food and Drug Administration of the Federal Security Agency, and explained why it did not consider its proposed business activities to be at variance with the provisions of the Federal Food, Drug, and Cosmetic Act [1]; it requested an

[1] 21 U.S.C.A. § 301 et seq.

expression of opinion from the Food and Drug Administration as to the legality of the interstate shipment of such a food product, and was advised by Walter G. Campbell, Commissioner of Food and Drugs, that, in the opinion of the Food and Drug Administration, such an artificially colored product would be adulterated within the meaning of Section 402(b) of the Federal Food, Drug, and Cosmetic Act.[2] Appellant alleged, also, in its complaint in the District Court, that on June 3, 1942 it sent to the Attorney General of the United States, the following telegram: "Our client, The Helco Products Company Inc., 111 Hudson Street New York desires to ship white poppy seed dyed blue with a harmless vegetable dye in interstate commerce. J K Kirk of the Food and Drug Administration by radiogram dated December 18, 1941, stated that such action would be a violation of law. This was supplemented by a letter of February 23 signed by W G Campbell, Commissioner of Food and Drugs, reaffirming the department's attitude as stated in the radiogram. We should like to know whether you would hold such action on my client's part a violation of law and if you would institute prosecution on such a holding. Kindly wire answer collect, as the matter is being held in abeyance by the Court pending a motion made in an action by my client against Federal Security Administrator for a declaratory judgment." In reply to this telegram, the Attorney General, on June 2, 1942, informed appellant: "Liturgic white poppy seed dyed blue please be advised that the Attorney General is authorized by law to give opinions only to the President and heads of Executive Departments." Upon the basis of these allegations, appellant alleged further that in the event it ships dyed poppy seeds in interstate commerce, the Food and Drug Administration will advise the Attorney General that the shipment thereof constitutes a violation of the Federal Food, Drug, and Cosmetic Act; that the Attorney General will thereupon "effectuate the recommendation of the Food and Drug Administration," by seizing and condemning such dyed poppy seeds in interstate commerce, or, in the alternative, will bring criminal proceedings against appellant, its agents and employees; that appellant has no adequate remedy at law; wherefore, appellant demands judgment against the Federal Security Administrator and the Attorney General, declaring that the Federal Food, Drug, and Cosmetic Act does not prohibit the interstate shipment of artificially colored poppy seeds, properly labeled.

The issue which we must decide is whether there is a case of actual controversy within the meaning of the Declaratory Judgment Act;[3] in other words, whether the facts alleged, under all the circumstances, show that there is a substantial controversy between parties having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.[4] In John P. Agnew & Co. v. Hoage[5] this Court said that "mere supposition that the appellee's opinion will be erroneously and illegally applied," was not sufficient to support a complaint for a declaratory judgment. This is equally true in the present case. Here, no opinion had been expressed by either appellee named in the complaint. The Attorney General declined to answer the hypothetical question submitted to him; and it does not appear that the question was even submitted to the Federal Security Administrator. Appellant concedes that the Agnew case, and others,[6] speak in terms of an official threat of enforcement, as a requisite of justiciability in declaratory judgment actions. But appellant would distinguish the present case on the

[2] In support of this allegation appellant submitted, as an exhibit, a letter from the Commissioner of Food and Drugs which contains the following paragraph: "It is therefore our considered opinion that the interstate shipment of this artificially colored product under any labeling would result in an adulterated product within the meaning of section 402(b) of the Federal Food, Drug, and Cosmetic Act, and that this violation could not be corrected by any form of labeling."

[3] 28 U.S.C.A. § 400.

[4] Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826.

[5] 69 App.D.C. 116, 120, 99 F.2d 349, 353.

[6] Blue Star Auto Stores v. Fleming, D.C.D.C., 50 F.Supp. 928; Babbitt Auto Parts Co. v. Fleming, D.C.D.C., 51 F.Supp. 360; F. W. Maurer & Sons Co. v. Andrews, D.C.E.D.Pa., 30 F.Supp. 637; Mushroom Co-operating Canning Co. v. Jacobs, D.C.E.D.Pa., 35 F.Supp. 624; Connecticut Importing Co. v. Perkins, D.C.Conn., 35 F.Supp. 414.

theory that: "In the case at bar the Administrator has the authority and *as a matter of law has officially threatened* to prosecute the appellant or to seize and libel its merchandise." [Italics supplied.] Specifically, it argues that (1) an oral or written threat of enforcement is not an absolute condition precedent to the use of the declaratory judgment, when (2) the threat of prosecution "is implicit in the statute by reason of the civil and criminal sanctions attached to the statute"; (3) the declaration, by the Commissioner of Food and Drugs, that the interstate shipment of colored poppy seeds would constitute a violation of the Act, constitutes, as a matter of law, a threat to enforce the statute, and (4) carries with it the duty to report such violation to the Attorney General, who (5) thereupon has the mandatory duty to prosecute a violation of the statute (6) reported to him by the Federal Security Administrator. Several of these propositions, at least, if not all, are without merit; and if appellant's standing to sue depends upon establishing them, then it must fail.

■ Obviously, the declaration of the Commissioner is several steps removed from a threat of prosecution. Neither he nor his superior, the Federal Security Administrator, has power to prosecute or to require prosecution.[7] Moreover, [1] his advisory opinion, in answer to a hypothetical question, does not foreclose a contrary, conclusion, by him, upon an actual state of facts; [2] his recommendation for prosecution, assuming that he makes one, does not establish the fact that a violation has occurred; [3] nor does it require the Administrator to recommend prosecution to the Attorney General; [4] while the Attorney General, in the performance of his official duties, has power to decide, or delegate power to decide, whether a particular statute has been violated and, if so, whether to initiate prosecution, his judgment is not in any way controlled by a report from the Federal Security Administrator, much less by the declaration or recommendation of an officer subordinate to the Federal Security Administrator; [5] specifically, he is under no "mandatory duty" to do anything under such circumstances. This is exactly the type of official duty, the performance of which is not subject to control by mandatory process.[8] The language of appellant's contention in this respect is phrased with interesting disingenuity. It urges its right to a judgment declaring that its proposed business activity will not constitute a violation of the law, while in the same breath it asserts the mandatory duty of the Attorney General to prosecute it for violating the law.

It does not appear just how far appellant would carry its argument concerning the threat of prosecution which, it says, is implicit in the statute by reason of its civil and criminal sanctions. Here again the argument reduces itself, very quickly, to an absurdity. Certainly such sanctions are convincingly present in laws proscribing homicide and robbery. But, presumably, it would not be seriously contended that one who contemplated killing another, or taking his property, could establish his right to a declaratory judgment, upon a hypothetical case of murder or robbery, by requesting in advance the advice of a grand jury or the attorney general. The fact that one wants[9] or needs legal advice is not sufficient.

■ We conclude that the present case was not an appropriate one for a declaratory judgment and that there is no showing of abuse of discretion in the action of the District Court dismissing the complaint.[10] The Supreme Court has said the pronouncements, policies, and programs of a government administrative agency do not give rise to a justiciable controversy, save as they have fruition in action of a definite and concrete character, constituting an actual or threatened interference with the rights of persons com-

7 21 U.S.C.A. § 335: "Before any violation of this chapter is reported by the Administrator to any United States attorney for institution of a criminal proceeding, the person against whom such proceeding is contemplated shall be given appropriate notice and an opportunity to present his views, either orally or in writing, with regard to such contemplated proceeding." § 337; 5 U.S.C.A. § 309.

8 Hammond v. Hull, 76 U.S.App.D.C. 301, 131 F.2d 23, and cases there cited; United States ex rel. White v. Coe, 68 App.D.C. 218, 95 F.2d 347, and cases there cited; United States ex rel. Roughton v. Ickes, 69 App.D.C. 324, 101 F.2d 248.

9 F. W. Maurer & Sons Co. v. Andrews, D.C., 30 F.Supp. 637, 638.

10 Brillhart v. Excess Insurance Co., 316 U.S. 491, 494, 62 S.Ct. 1173, 86 L. Ed. 1620.

plaining.[11] To permit suits for declaratory judgments upon mere informal, advisory, administrative opinions might well discourage the practice of giving such opinions, with a net loss of far greater proportions to the average citizen than any possible gain which could accrue.[12] An example of an administrative program, which *was* put into action of such definite and concrete character as to create an actual controversy, may be found in Wallace v. Currin.[13] The present case constitutes no counterpart of the Wallace case. Here, there was no more than an advisory opinion given in response to a hypothetical question.[14] There, the Secretary of Agriculture had virtually taken over the tobacco market of Oxford, North Carolina, by an order effective as of a certain date. The complainants in that case, warehousemen whose business was the selling of tobacco on the Oxford market, were the persons directly affected by the order. Failure to comply with its terms would result in liability for criminal penalties, without more. Here, no order was issued, no steps were taken to put any administrative program into action; appellant was far removed from penalties of any kind. This was not enough.[15]

No doubt, a persuasive argument can be made for extending the use of advisory opinions to all situations in which conflicts may impend, between private business and government agencies, in the working out of policies and programs. Much of the uncertainty of business management could, perhaps, thus be eliminated. What a comfort it would be, if a declaratory judgment could be made as *available* as an interoffice memorandum, whenever a board of directors meets to consider a proposed new venture. But that millenium has not yet arrived.

Affirmed.

Mr. Justice VINSON sat during the argument of this case; concurred in the result when it was considered in conference, but resigned from the Court before the opinion was prepared.

---

[11] Ashwander v. T. V. A., 297 U.S. 288, 324, 325, 56 S.Ct. 466, 80 L.Ed. 688.

[12] See Borchard, Declaratory Judgments, 2d Ed., 1941, 919 et seq.

[13] 4 Cir., 95 F.2d 856, affirmed 306 U. S. 1, 59 S.Ct. 379, 83 L.Ed. 441.

[14] Ætna Life Insurance Co. v. Haworth, 300 U.S. 227, 241, 57 S.Ct. 461, 81 L.Ed. 617, 108 A.L.R. 1000.

[15] Great Atlantic & Pacific Tea Co. v. Grosjean, 301 U.S. 412, 429, 57 S.Ct. 772, 81 L.Ed. 1193, 112 A.L.R. 293.