## WEST et al. v. BANK OF COMMERCE & TRUSTS et al.

### No. 5447.

Circuit Court of Appeals, Fourth Circuit.

Feb. 2, 1946.

R. Hugh Rudd and Harold H. Dervishian, both of Richmond, Va., for appellants Alice M. West and others.

Henry R. Miller, Jr., Asst. City Atty., of Richmond, Va. (Horace H. Edwards, City Atty., of Richmond, Va., on the brief), for appellant City of Richmond.

Ralph T. Catterall (Williams, Mullen & Hazelgrove and Guy B. Hazelgrove, all of Richmond, Va., on the brief), for appellees.

Before SOPER and DOBIE, Circuit Judges, and GILLIAM, District Judge.

SOPER, Circuit Judge.

The declaratory judgment in this case entered on October 4, 1945 undertakes only to state the true intent and meaning of an earlier judgment of the court entered on February 19, 1942. In the last-mentioned judgment the court declared that the zoning ordinance of the City of Richmond approved April 13, 1927, in so far as it applied to the southern half of a lot in the city, known as the Allen lot and belonging to the plaintiffs, was an unreasonable and arbitrary exercise of the police power and therefore unconstitutional; but that as applied to the northern half of the property, the ordinance was reasonable and proper. Accordingly the court enjoined the city, the Mayor and the Commonwealth's Attorney of the city, the defendants in the earlier cause, from enforcing the ordinance against the plaintiffs in so far as it denied them the right to use the southern half of the lot in such manner as is permitted in a B-1 business district in the zoning ordinance.

This decree of February 19, 1942 was based upon the pleadings and upon a stipulation of facts signed by counsel for the respective parties substantially as follows: When the ordinance of 1927 was adopted, it was contemplated that the Allen lot, which

is located at the northeast corner of Chamberlayne Avenue and Lancaster Road in the city, and the neighboring section to the north would become and remain a high-class residential section; but the character of the neighborhood had changed. Chamberlayne Avenue had become a principal arterial highway for traffic north and southbound on United States Highway No. 1, a number of residences had been turned into tourist homes, and the other corners of the intersection were zoned for business purposes. Hence the whole of the Allen lot was not susceptible of development for residential purposes and unless the southern half could be used for business purposes, it could not be used in a reasonably profitable manner. The application of the ordinance to the southern half of the property and the prohibition against the use thereof for business purposes did not tend to promote the public health, safety, morals or general welfare of the community. Finally it was stipulated that the city had recently appointed a Planning Committee to consider the rezoning of the city, and that the Commission had appointed an expert to advise it and that the Commission and the expert would report to the city that the southern half of the Allen lot should be zoned as a B-1 business district.

It seems that the stipulation of facts and the judgment of the court based thereon were the result of a compromise between the attorneys representing the city and the attorneys representing the property owners who desired to dispose of the lot for use as a gas station; but the war made the use of the property for business purposes impracticable and it is still unimproved.

A new element entered into the situation on May 19, 1943 when the city adopted a new general zoning ordinance, which amongst other changes liberalized the residential restrictions applicable to the property on Chamberlayne Avenue north of Lancaster Road; but retained the whole of the Allen lot in the residential zone so that the use of any part of it for a gasoline filling station was forbidden. Nothing was done by the plaintiffs until the present suit was brought on April 25, 1945. The complaint alleged that the purpose and effect of the injunction issued by the court in 1942 was to allow the southern half of the property to be used as a gasoline station, but that the ordinance of 1943 forbad such use and that the city attorney had asserted that the property could not be so used, and that the city, acting through its attorney, was threatening to enforce the new ordinance against the owners and their successors in title. The plaintiffs therefore prayed the court to make an order in the form of a declaratory judgment wherein the court would decree that the true intent and meaning of this judgment of February 20, 1942 was that the plaintiffs and their successors in title are entitled to use the property for a gasoline station and for all other uses permitted in a B-1 business district, as defined in the zoning ordinance of 1927, and that no ordinance adopted after the judgment of 1942 can diminish the rights of the plaintiffs thereby established.

The city in its answer admitted the allegations of the complaint with respect to the proceedings in the earlier case but denied that the city or its attorneys had taken the position that the owners of the lot could not use it for business purposes. The answer asserted that the attorneys of the city had merely expressed the opinion that if the owners desired to use the lot for business purposes, they should apply to the Commissioner of Buildings of the city for a permit to erect a building and if denied should apply to the Board of Zoning Appeals, and if denied permission by the Board, should then invoke the State courts in accordance with the statutory provisions covering such cases. The answer expressly declared that no controversy existed between the owners of the lot and the City of Richmond. The answer also stated that the city and all of its officers would recognize and obey the judgment of the court entered on February 20, 1942.*

Subsequently forty-eight owners of residence property in the neighborhood of the Allen lot were allowed to intervene in the case and to file an answer. Therein they set up the following matters in defense: (1) that there was no actual controversy between the plaintiff on the one hand and the City of Richmond and the intervenors on the other; (2) that the judgment of February 19, 1942 merely declared that the ordinance of 1927, as applied to the southern half of the Allen lot, was unconstitutional and consequently enjoined the enforcement thereof; but the present suit

---

* This last averment does not mean that the city will not enforce the ordinance of 1943, but only that the city will not enforce the ordinance of 1927 which has been repealed.

seeks to enlarge that judgment into an injunction against the enforcement of any subsequent ordinance of the City of Richmond, and to interfere with the city in the exercise of its legislative functions; (3) that the intervenors were not parties to the original suit and were therefore not bound by the judgment of February 19, 1942; (4) that the ordinance of 1943 does not violate the Fourteenth Amendment to the Federal Constitution but is a reasonable regulation in the interests of the public health, safety, morals and welfare of the City as a whole and of the area in which the property is located, and that the ordinance of 1943 permits a broader use of the plaintiffs' property in that it allows the use thereof for multiple family dwellings whereas the ordinance of 1927 permitted only single family and two family dwellings; (5) and that the plaintiffs have an adequate remedy in the provisions of the zoning ordinance and the laws of the State.

Upon these pleadings and without the taking of additional evidence, the court, after pre-trial conferences and argument in June, 1945, granted a motion for summary judgment in favor of the plaintiffs, and entered a judgment on October 4, 1945 wherein it adjudged that the true intent and meaning of the decree of February 19, 1942 was that the southern half of the Allen lot could be used by the owners and their successors in title for all purposes permitted in a B-1 business district under the ordinance of 1927, and that the City of Richmond and all persons acting for it were enjoined from preventing the plaintiffs and their successors in title from using the property for any of said uses so long as the condition of the property and the property in the surrounding neighborhood did not so change as to make a change in the zoning thereof reasonable and constitutional.

■ In our opinion the motion for summary judgment should have been denied on the ground first stated by the defendants, that the case did not present an "actual controversy" within the meaning of the Federal Declaratory Judgment Statute, 28 U.S.C.A. § 400. The pleadings failed to show a definite present purpose on the part of the owners to use the lot for any purpose forbidden by either ordinance. The complaint contained no allegation that the owners desired or were about to use the property for a gasoline station or other business purpose. The allegations that the city officials had asserted that the lot could not be used for

business purposes and were threatening to enforce the ordinance of 1943 against the owners were specifically denied in the answer of the city and were perforce eliminated from the court's consideration when the plaintiffs elected to proceed without evidence upon a motion for summary judgment.

Moreover, the discussions at the conferences before the judge failed to develop a definite, concrete conflict of a justiciable character. It is true that there was much argument in which conflicting opinions were expressed by opposing counsel as to the binding effect of the decree of 1942 upon the city and upon the intervenors and as to the right of the court to restrict the city in the exercise of its legislative powers and as to the constitutionality of the ordinance of 1943. Furthermore, the attorneys for the property owners stated at one time during the discussions that the owners desired to erect a filling station and at another that a valuable contract for the sale of the property, not produced in evidence or more particularly described, could not be consummated because of the uncertainty as to the permissible use of the property. But the attorneys for the owners also stated that no application for a building permit had been made, and that on account of the war it was not possible at the time and might not be possible for years to come to build a filling station on the lot.

■■ The failure of the property owners to show that an actual controversy in the sense of the statute existed was not merely a technical defect and was not due to oversight on their part. The attorneys for the defendants repeatedly made the point during the conferences that an actual justiciable controversy did not exist, and the judge suggested the desirability of taking evidence on this and other points but this opportunity was not availed of, and after deliberate consideration and several hearings the case was finally submitted to the judge on a motion for summary judgment. It follows that in effect the plaintiffs were seeking an advisory opinion from the court that if and when the opportunity offered they would be free to use or sell the lot for the indicated purpose. But this may not be done. The Declaratory Judgment Act was designed to facilitate the decisions of existing controversies only, and it has been repeatedly held that they must be sufficiently definite and immediate to justify this characterization. In Aetna

Life Ins. Co. v. Haworth, 300 U.S. 227, 240, 241, 57 S.Ct. 461, 464, 81 L.Ed. 617, 108 A.L.R. 1000, the court said: "A 'controversy' in this sense must be one that is appropriate for judicial determination. * * * A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot. * * * The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. * * * It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts. * * * Where there is such a concrete case admitting of an immediate and definitive determination of the legal rights of the parties in an adversary proceeding upon the facts alleged, the judicial function may be appropriately exercised although the adjudication of the rights of the litigants may not require the award of process or the payment of damages. * * * And as it is not essential to the exercise of the judicial power that an injunction be sought, allegations that irreparable injury is threatened are not required."

In Maryland Casualty Co. v. Pacific Co., 312 U.S. 270, 272, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826, the court said:

"The question is whether petitioner's allegations are sufficient to entitle it to the declaratory relief prayed in its complaint. This raises the question whether there is an 'actual controversy' within the meaning of the Declaratory Judgment Act, Judicial Code § 274d, 28 U.S.C. § 400, 28 U.S.C.A. § 400, since the District Court is without power to grant declaratory relief unless such a controversy exists. Nashville C. & St. L. Ry. Co. v. Wallace, 288 U.S. 249, 259, 53 S.Ct. 345, 346, 77 L.Ed. 730, 87 A.L.R. 1191; U.S.C.A. Constitution, Art. III, § 2.

"The difference between an abstract question and a 'controversy' contemplated by the Declaratory Judgment Act is necessarily one of degree, and it would be difficult, if it would be possible, to fashion a precise test for determining in every case whether there is such a controversy. Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. See Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 239-242, 57 S.Ct. 461, 463, 464, 81 L.Ed. 617, 108 A.L.R. 1000. It is immaterial that frequently, in the declaratory judgment suit, the positions of the parties in the conventional suit are reversed; the inquiry is the same in either case."

In the application of these principles, the courts have many times decided that differences of opinion as to the meaning of a statute or the extent of governmental authority or the possibility that a person may at some future time be adversely affected by the provisions of a statute or by the acts of governmental officials do not give rise to a justiciable case until an actual concrete controversy occurs. For example, in such a situation the federal courts have refused to advise employers whether or not their employees are subject to the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq. See F.W. Maurer & Sons Co. v. Andrews, D.C.E.D.Pa., 30 F.Supp. 637; Connecticut Importing Co. v. Perkins, D.C. Conn., 35 F.Supp. 414; Babbitt Auto Parts Co. v. Fleming, D.C.U.S.D.C., 51 F.Supp. 360. See also John P. Agnew & Co. v. Hoage, 69 App.D.C. 116, 99 F.2d 349 where a difference of opinion arose as to whether employees of a coal dealer fell within the Employees' Compensation Act of the District of Columbia; Southern Pacific Co. v. Conway, 9 Cir., 115 F.2d 746 where the question was whether the Arizona Train Limit Law was constitutional and binding on the Railroad Company; Ex-Cell-O Corp. v. City of Chicago, 7 Cir., 115 F.2d 627, where a manufacturer of paper bottles questioned the validity of an ordinance which prohibited the use of paper milk containers by distributors of milk in the City of Chicago; Smith v. Blackwell, 4 Cir., 115 F.2d 186, where qualified voters in South Carolina sought a decision that the South Carolina election law did not adequately preserve the secrecy of the ballot but the defendants were officials who were charged with no duty respecting the matters in suit; Helco Products Co. v. McNutt, 78 U.S.App.D.C. 71, 137 F.2d 681, 149 A.L.R. 345, where a manufacturer sought a judgment as to its right to color its product; and Electric Bond Co. v. Commission, 303 U.S. 419, 443, 58 S.Ct. 678, 82 L.Ed. 936, 115 A.L.R. 105, where the

court held that certain holding companies were subject to the registration provisions of the Public Utility Act of 1935, 15 U.S. C.A. § 79 et seq., but refused to entertain a cross-bill wherein they sought a declaratory judgment that other provisions of the Act not involved in the actual controversy were unconstitutional.

Since the judgment of the District Court must be reversed, we do not reach the questions that would become important if an actual controversy should arise, namely, the question, amongst others, whether the judgment of 1942, entered by consent upon a stipulation of facts by the law officers of the City, deprived the city council of its power to legislate in its discretion with respect to the lot in suit, and also the question whether the courts are free to consider the constitutionality of the ordinance of 1943 irrespective of the judgment of 1942 and to apply the established rule that when the constitutionality of a legislative act depends upon the existence of a state of facts it may not be stricken down as unconstitutional unless it is found to be without any rational basis. See Carolene Products Co. v. United States, 323 U.S. 18, 65 S.Ct. 1, 155 A.L.R. 1371.

Reversed.