TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-97-00252-CV






Shannon Brinkley, d/b/a Krane-Ko Vending, Appellant



v.



Texas Lottery Commission, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT


NO. 96-14591, HONORABLE JOHN K. DIETZ, JUDGE PRESIDING 







 Shannon Brinkley sued the Texas Lottery Commission to obtain a declaratory
judgment that certain machines, denominated "eight-liners," are not "gambling devices" as
defined by the Texas Penal Code. See Tex. Penal Code Ann. § 47.01(B)(4) (West Supp. 1998). 
He applied for an injunction against enforcement of any criminal or administrative penalties for
operating "eight-liners," and in a civil-rights action prayed for compensatory damages. The trial
court dismissed his causes of action for want of jurisdiction. Brinkley appeals. We will affirm
the judgment.


THE CONTROVERSY


 The Bingo Enabling Act, administered and enforced by the Texas Lottery
Commission, provides as follows: 

A game of chance other than bingo . . . may not be conducted or allowed during
an occasion when bingo is played. . . . This subsection does not prohibit the
exhibition and play of an amusement machine that is not a gambling device as
defined by Section 47.01, Penal Code.



Tex. Rev. Civ. Stat. Ann. art. 179d, § 11(k) (West Supp. 1998). Section 47.01 of the Penal Code
defines "gambling device." (1)

 The Commission licenses and regulates some 2,500 bingo-parlors. Many licensees
allow the operation of "eight-liners" in their parlors. Eight-liners are electronic machines (similar
to "slot machines") that dispense gift certificates redeemable for prizes. The machines do not all
operate in the same manner; their operation and payout can be configured in a variety of ways.

 The Commission received numerous complaints and inquiries from licensees who
were uncertain about whether the particular machines in their parlors were set up to operate
legally. In response, the Commission sent to its licensees letters setting forth criteria by which
the licensees might ascertain the legal status of machines in their parlors. The letters included a
warning that illegally operated machines exposed licensees to administrative and criminal
penalties. (2) The Commission noted in the letters that application of the stated criteria would not
necessarily determine the legality of the machines and "the agency cannot guarantee that the use
of the eight-liners is necessarily legal." The letters concluded: "we hope this helps answer
questions you may have in regard to this issue."

 Brinkley does not hold a Commission license to operate a bingo parlor. He owns
several eight-liners that he formerly operated in a space he leases within a licensed bingo parlor. 
When Brinkley's lessor received the Commission's letters, he refused to allow Brinkley to
continue the operation of his eight-liners in the bingo parlor.

 Brinkley pleaded against the Commission the following causes of action:

 (1) An action under the Uniform Declaratory Judgments Act for a judicial
determination that eight-liners are not gambling devices under section 47.01(4)(B) of the Texas
Penal Code, and that the Commission's interpretation of section 47.01 is unconstitutional;

 (2) an action for declaratory judgment under section 2001.038 of the Texas
Government Code that the Commission's letters constitute "rules," as defined by section
2001.003(6) of the Administrative Procedure Act, and that the "rules" are invalid because they
were not formulated or adopted in compliance with the rulemaking provisions of Texas
Government Code sections 2001.021-.037; (3)

 (3) an application for injunction restraining the Commission and "all others" from
interfering with the operation of Brinkley's eight-liners in bingo parlors, whether by raids,
harassment, criminal prosecution, forfeiture and seizure of Brinkley's eight-liners, or any other
way; and 

 (4) actions for injunctive relief and compensatory damages, under 42 United States
Code sections 1983 and 1985, for violation of Brinkley's civil rights under color of state law. (4)

 The Commission filed pleas to the jurisdiction, contending the trial court lacked
subject-matter jurisdiction because (1) the actions were barred by the doctrine of sovereign
immunity; (2) Brinkley lacked standing to assert the actions alleged; (3) the trial court lacked
jurisdiction to determine legal relationships under a penal statute; and (4) there existed no
justiciable controversy. The trial court denied the plea of sovereign immunity but sustained the
pleas on the other grounds claimed and dismissed the actions. Brinkley contends the trial court
possessed jurisdiction on the grounds discussed below.


UNIFORM DECLARATORY JUDGMENTS ACT


 The separation-of-powers doctrine prohibits courts from issuing advisory opinions. 
Texas Ass'n of Bus. v. Texas Air Control Bd., 852 S.W.2d 440, 444 (Tex. 1993); Firemen's Ins.
Co. v. Burch, 442 S.W.2d 331, 333 (Tex. 1969); Morrow v. Corbin, 62 S.W.2d 641, 647 (Tex.
1933). The distinctive feature of an advisory opinion is that it decides an abstract question of law
without binding the parties. Alabama State Fed'n of Labor v. McAdory, 325 U.S. 450, 461
(1945); Texas Ass'n of Bus., 852 S.W.2d at 444; Firemen's Ins. Co., 442 S.W.2d at 333;
California Prods. Inc. v. Puretex Lemon Juice, Inc., 334 S.W.2d 780, 783 (Tex. 1960). An
opinion is advisory when the judgment sought would not constitute specific relief to a litigant or
affect legal relations. Reuter v. Cordes-Hendreks Coiffures, 422 S.W.2d 193, 196 (Tex. Civ.
App.--Houston [14th Dist.] 1967, no writ). "The court will not declare rights on facts which
have not arisen or adjudicate matters which are contingent, uncertain, or rest in the future." 26
C.J.S. Declaratory Judgments, § 28 (1956).

 Brinkley alleged that he sustained "irreparable injury to vested property rights with
no adequate remedy at law" because his lessor, "as a result" of the Commission's letters,
demanded that Brinkley remove his machines. Elsewhere in his petition, Brinkley's allegations
are susceptible of a construction that the letters prevent his operating his machines in other bingo
parlors. We believe Brinkley's cause of action under the UDJA requires an advisory opinion. 
Brinkley and the Commission are the only parties to the lawsuit and Brinkley is not a licensee
subject to the Commission's regulation. (5) Brinkley necessarily speculates that a declaratory
judgment, holding that eight-liners are not gambling devices, may induce his lessor or other bingo-parlor licensees to allow him to operate his machines, however configured, in their parlors. This
is a contingency, an uncertainty, a hypothesis upon which a court may not decide the legal issues
raised in Brinkley's petition. See Coalson v. City Council of Victoria, 610 S.W.2d 744, 747 (Tex.
1980) (suit to declare invalid city charter-amendment initiative requires advisory opinion because
voters might disapprove proposed amendment); Central Sur. & Ins. Corp. v. Anderson, 445
S.W.2d 514, 515 (Tex. 1969) (suit for declaratory judgment that insurer liable to pay judgment,
in advance of judgment against tort defendant, requires advisory opinion); see generally Texas
Ass'n of Bus., 852 S.W.2d at 444. (6)


 INJUNCTIVE RELIEF


 The trial court also lacked jurisdiction to grant the injunctive relief requested. (7) 
Injunctions may not issue unless it is shown that the respondent will engage in or is engaging in
the activity to be enjoined. See State v. Morales, 869 S.W.2d 941, 946-47 (Tex. 1994). Brinkley
seeks to enjoin the Commission and "all others" from interfering with the operation of his eight-liners in bingo parlors in any way, including the prohibition of raids, harassment, criminal
prosecution, and forfeiture and seizure of his machines. Brinkley alleged only that the
Commission sent the advisory letters to about 2,500 licensees. He has not alleged that the
Commission threatens to impose upon him (he is not a licensee) administrative penalties nor that
law enforcement authorities (not parties here) threaten to prosecute him under the criminal law. 
He has not alleged that the Commission, unless restrained, will enforce against him any sanction
within its power to enforce. We decline to hold as a matter of law that the Commission's sending
of the advisory letters to a large number of its licensees constituted a showing of "probable injury"
to Brinkley. See id. at 946-47; Transport Co. v. Robertson Transports, Inc., 261 S.W.2d 549,
552 (Tex. 1953) (requiring showing of "probable injury" if respondent not restrained). Absent
allegations of fact showing a probable injury, a court is without jurisdiction to grant the injunctive
relief requested. See Morales, 869 S.W.2d at 942, 946-47; see also Texas Employment Comm'n
v. Martinez, 545 S.W.2d 876, 877-78 (Tex. Civ. App.--El Paso 1976, no writ).


ADMINISTRATIVE PROCEDURE ACT--DECLARATORY JUDGMENT


 Section 2001.038 of the Administrative Procedure Act (APA) creates a cause of action for
declaratory judgment to determine the validity or applicability of an agency rule when it "is
alleged that the rule or its threatened application interferes with or impairs, or threatens to
interfere with or impair, a legal right or privilege of the plaintiff." Tex. Gov't Code Ann.
§ 2001.038 (West 1998). For purposes of section 2001.038 and all other sections in Chapter 2001
of the Texas Government Code, the word "rule"


(A) means a state agency statement of general applicability that:


 (i) implements, interprets, or prescribes law or policy; or


 (ii) describes the procedure or practice requirements of a state agency;


(B) includes the amendment or repeal of a prior rule; and


(C) does not include a statement regarding only the internal management or
organization of a state agency and not affecting private rights or procedures.



Tex. Gov't Code Ann. § 2001.003(6) (West 1998) (emphasis added).


 Brinkley contends the trial court had jurisdiction of his cause of action for
declaratory judgment, under section 2001.038 of the APA, because the Commission letters
amounted to a "rule" as defined in section 2001.003(6). We disagree.

 "Not every statement by an administrative agency is a rule for which the APA
prescribes procedures for adoption and for judicial review." Texas Educ. Agency v. Leeper, 893
S.W.2d 432, 443 (Tex. 1994). This observation refers to the fact that administrative agencies
routinely issue letters, guidelines, and reports, and occasionally file briefs in court proceedings,
any of which might contain statements that intrinsically implement, interpret, or prescribe law,
policy, or procedure or practice requirements. Are all such statements therefore "rules" within
the meaning of APA section 2001.003(6) and 2001.038? They are not for several reasons.

 It does not appear that the legislature has delegated to the Commission a power to
bind others by ukase--a naked proclamation contained, for example, in a letter, a set of guidelines,
or a report, or by a statement in a brief filed in a court proceeding. It appears instead that the
Commission may bind others generally only by a rule promulgated through the notice-and-comment procedures of APA sections 2001.022-.037, or bind particular litigants by the
Commission's order adjudicating a contested case conducted under the procedures set forth in
APA sections 2001.051-.147. The same is true in general of most constitutive statutes and
enabling acts delegating power to administrative agencies.

 The legislature intends that administrative agencies exercise effectively the powers
delegated to them. See Sexton v. Mount Olivet Cemetery Ass'n, 720 S.W.2d 129, 137 (Tex.
App.--Austin 1986, writ ref'd n.r.e.). Agencies would be reduced to impotence, however, if
bound to express their views as to "law," "policy," and procedural "requirements" through
contested-case decisions or formal rules exclusively; and they could not under such a theory
exercise powers explicitly delegated to them by the legislature. How, under such a theory, could
an agency practically express its views to an informal conference or advisory committee, or state
its reasons for denying a petition to adopt a rule, or file a brief in a court or agency proceeding? 
See Tex. Gov't Code Ann. §§ 2001.021, .031, .058 (West 1998).

 The foregoing are only examples derived from the APA itself. If every expression
by the agency as to "law," "policy," and procedural "requirements" requires the promulgation
of a formal rule, the agency could no longer exercise its "informed discretion" to choose
adjudication as a means of making law and policy, rather than rulemaking, a choice we have
repeatedly said an agency has when it possesses both adjudicatory and rulemaking powers. See,
e.g., Madden v. Texas Bd. of Chiropractic Exmr's, 663 S.W.2d 622, 626 (Tex. App.--Austin
1984, writ ref'd n.r.e.); State Bd. of Ins. v. Deffebach, 631 S.W.2d 794, 799 (Tex. App.--Austin
1982, writ ref'd n.r.e.). If the agencies were so restricted, they would be deprived, as a practical
matter, of the power to adjudicate; an agency could make valid "law" or "policy" only through
the straight-jacket of rulemaking, even though the agency might be quite unable to do so for any
number of reasons as noted in El Paso v. Public Util. Comm'n, 883 S.W.2d 179, 188-89 (Tex.
1994). (8)

 The very text of the APA rejects the theory that every agency pronouncement
regarding "law," "policy," and procedural "requirements" requires the promulgation of a formal
rule. That theory would destroy, for example, the distinction between "rules" and "policies"
found in section 2001.058 (b), (c), and (e); the word "policies" is rendered meaningless because
under that theory "policies" could only exist in the form of "rules." 

 We need not belabor the point. The definition in section 2001.003(6) is sufficiently
flexible to allow agencies to perform their functions without unnecessary procedural obstacles; the
definition expressly excludes from the definition of a "rule" any agency statements regarding only
the internal management or organization of an agency that do not affect private rights or
procedures. See Tex. Gov't Code Ann. § 2001.003(6)(C) (West 1998). This statutory exclusion
encompasses any agency statement regarding "law," "policy," or procedural "requirements" made
outside the rulemaking and contested-case context; such statements have no legal effect on private
persons absent a statute that so provides or some attempt by the agency to enforce its statement
against a private person, as in Madden where the agency attempted to enforce, in the course of
adjudicating a contested case, its policy of what constituted a "bona fide reputable chiropractic"
school. See Madden, 663 S.W.2d at 626-27. At that point, an affected person may challenge, if
he wishes, the validity or applicability of the agency statement on whatever grounds may be
applicable. Until then, the agency's pronouncements regarding "law," "policy," and procedural
"requirements" remain merely informal views, effective only upon and within the agency's
internal management and organization. (9) See Leeper, 893 S.W.2d at 443 (state board of education
resolution stating guidelines for school districts pending statutory revision); United Parcel Serv.,
Inc. v. Oregon Transp. Comm'n, 555 P.2d 778, 780 (Or. Ct. App. 1976) (commission statement
consenting to city's designation of truck route); Reynolds Sch. Dist. v. Oregon Sch. Employees,
650 P.2d 119, 123 (Or. Ct. App. 1982) (agency statement made in adjudication of previous
contested case); United States v. Fitch Oil Co., 676 F.2d 673, 678 (Temp. Emer. Ct. App. U.S.
1982) (statement of Secretary of Energy); Durnin v. Allentown Fed. Sav. and Loan Ass'n, 218
F.Supp. 716, 721 (E.D. Pa. 1963) (letter from supervisory agent of Federal Home Loan Bank
Board); 1 Davis and Pierce, Administrative Law Treatise § 3.5 at 120 (3d ed. 1994). (10)

 Accordingly, we hold the Commission's letters were not rules within the meaning
of APA section 2001.038, authorizing suits for declaratory judgment in district court. 


CIVIL-RIGHTS ACTIONS


 Brinkley also requested injunctive relief and damages under 42 United States Code
sections 1983 and 1985. Section 1983 provides as follows:


Every person who, under color of any statute, ordinance, regulation, custom, or
usage, of any State or Territory or the District of Columbia, subjects or causes to
be subjected, any citizen of the United States or other person within the jurisdiction
thereof to the deprivation of any rights, privileges, or immunities secured by the
Constitution and laws, shall be liable to the party injured in an action at law, suit
in equity, or other proper redress. For the purposes of this section, any Act of
Congress applicable exclusively to the District of Columbia shall be considered to
be a statute of the District of Columbia.



42 U.S.C.A. § 1983 (1994) (emphasis added). Section 1985 prohibits a "conspiracy" by two or
more "persons" to deprive another of constitutional rights under color of state law. See 42
U.S.C.A. § 1985 (1994).

 Section 1983 applies only to "persons" as that term is used in the statute. See Will
v. Michigan Dep't of State Police, 491 U.S. 58, 63-70 (1989). States are not "persons" as that
term is used in section 1983. Id. at 71. Governmental entities that are considered "arms of the
State" are also not persons under section 1983. Id. at 70. When a litigant seeks relief from the
acts of a state agency under section 1983, he must therefore sue an individual in authority at an
agency as opposed to the agency itself. See Ntreh v. University of Tex. at Dallas, 936 S.W.2d
649, 652 (Tex. App.--Dallas 1996), aff'd as modified, 947 S.W.2d 202 (Tex. 1997).

 The doctrine of sovereign immunity, unless waived, protects the State of Texas, its
agencies and its officials, against lawsuits for damages, absent legislative consent to sue the State.
See Federal Sign v. Texas S. Univ., 951 S.W.2d 401, 405 (Tex. 1997); Griffin v. Hawn, 341
S.W.2d 151, 152-53 (Tex. 1960); Hosner v. DeYoung, 1 Tex. 764, 769 (1847). The Texas
Lottery Commission is an "arm of the State" and not a person under section 1983. If the
Commission is not a person for purposes of section 1983, it is not a person for purposes of section
1985. See State v. Biggar, 848 S.W.2d 291, 295 (Tex. App.--Austin 1993, no writ). Because
sections 1983 and 1985 are inapplicable to the Commission, the sole defendant in Brinkley's
action, and he has not obtained legislative consent to sue the State, we hold the trial court did not
err in dismissing for want of subject-matter jurisdiction Brinkley's claims under sections 1983 and
1985. (11)
 See Ntreh, 936 S.W.2d at 652. 

 Having concluded that the trial court was without jurisdiction to render judgment
on Brinkley's claims for compensatory damages and for declaratory and injunctive relief, we
affirm the judgment below.



 

 John Powers, Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Powers*

Affirmed

Filed: February 4, 1999

Publish


















* Before John Powers, Senior Justice (retired), Third Court of Appeals, sitting by assignment. 
See Tex. Gov't Code Ann. § 74.003(b) (West 1998).
1. "Gambling device" means any electronic, electromechanical, or mechanical contrivance not
excluded under Paragraph (B) that for a consideration affords the player an opportunity to obtain
anything of value, the award of which is determined solely or partially by chance, even though
accompanied by some skill, whether or not the prize is automatically paid by the contrivance. The
term:


* * *
 


(B) does not include any electronic, electromechanical, or mechanical contrivance
designed, made, and adapted solely for bona fide amusement purposes if the
contrivance rewards the player exclusively with noncash merchandise prizes,
toys, or novelties, or a representation of value redeemable for those items, that
have a wholesale value available from a single play of the game or device of not
more than 10 times the amount charged to play the game or device once or $5,
whichever is less.

 

Texas Penal Code Ann. § 47.01(4)(B) (West Supp. 1998).
2. The Commission may impose administrative penalties for violations of the Bingo Enabling
Act. Law-enforcement authorities enforce the Texas Penal Code.
3. See Tex. Gov't Code Ann. §§ 2001.021-.037 (West 1998).
4. See 42 U.S.C. §§ 1983, 1985 (1994).
5. The Commission regulates amusement machines pursuant to article 179d of the Texas
Revised Civil Statutes (Bingo Enabling Act) which is concerned only with those amusement
machines located in bingo halls. See Tex. Rev. Civ. Stat. art. 179d (West 1998). Outside of
bingo halls, law enforcement personnel are charged with the enforcement of Texas Penal Code
section 47.01 which prohibits the use of "gambling devices." Tex. Penal Code § 47.01 (West
1994 & Supp. 1998).
6. The Uniform Declaratory Judgments Act, found in the Texas Civil Practice & Remedies
Code, is a procedural device for deciding cases already within a court's jurisdiction; the statute
does not enlarge a court's jurisdiction so as to authorize the rendition of advisory opinions. See
Tex. Civ. Prac. & Rem. Code Ann.§§ 37.001-.011 (West 1997); Texas Ass'n of Bus. v. Texas
Air Control Bd., 852 S.W.2d 440, 444 (Tex. 1993).
7. Brinkley requested injunctive relief pursuant to section 65.011 of the Texas Civil Practice
& Remedies Code and section 16.29 of the Texas Business & Commerce Code (Injury to Business
Reputation or Trade Name or Mark); Tex. Civ. Prac. & Rem. Code Ann. § 65.011 (West 1997);
Tex. Bus. & Com. Code Ann. § 16.29 (West Supp. 1998).
8. The legislature may, by statute, require an agency to make formal rules with regard to
particular matters. See Railroad Comm'n v. Shell Oil Co., 206 S.W.2d 235, 241 (Tex. 1947). 
The agency would be bound, of course, to enact rules in compliance with the legislative mandate. 
It may also be that a constitutional provision requires, in particular circumstances, that the agency
promulgate a formal rule before attempting to bind private persons by the agency's view of "law,"
"policy," or procedural "requirements." See, e.g., Madden v. Texas Bd. of Chiropractic Exmr's,
663 S.W.2d 622, 626-27 (Tex. App.--Austin 1984, writ ref'd n.r.e.). Such matters are not
involved in the present controversy.
9. The letters sent by the Commission in this instance were, on their face, simply advisory
guidelines; they did not purport to express a final opinion on the legality of eight-liners of any
particular kind. We have previously noted the valuable role such advisory opinions serve in
administration. See Texas Comm'n of Licensing and Regulation v. Model Search America, Inc.,
953 S.W.2d 289 (Tex. App.--Austin 1997, no writ). As we stated in that opinion, 


[T]o permit suits for declaratory judgments upon mere informal, advisory,
administrative opinions might well discourage the practice of giving such opinions,
with a net loss of far greater proportions than any possible gain.


Id. at 293 quoting, Helco Prods. Co. v. McNutt, 137 F.2d 681, 684 (D.C. Cir. 1943). 
Considering the number of bingo-parlor licensees and the variety of ways in which eight-liners can
be configured, the practical value of the letters is obvious. Nothing in the letters purports to
foreclose an individual licensee from seeking, if he wishes, a formal opinion from the Commission
regarding particular eight-liners. While private parties may voluntarily comply with such
guidelines, they are not legally bound to do so.
10. The first Commission letter stated:


TO ALL BINGO LICENSEES:


The Texas Lottery Commission has received complaints regarding the use of
gambling devices at locations where bingo is being conducted. The specific
complaints concern the operation of devices popularly known as "Eight Liners."


The Texas Lottery Commission considers these devices to be gambling devices as
defined by Section 47.01(4) of the Texas Penal Code, as a result of the method of
operation and payoff of these devices.


Please be aware that Section (11(k)) of the Bingo Enabling Act, Texas Revised Civil
Statutes Article 179d, provides the following: "A game of chance other than bingo
may not be conducted or allowed during an occasion when bingo is played. This
subsection does not prohibit the exhibition and play of an amusement machine that
is not a gambling device as defined by Section 47.01, Penal Code."


Therefore, effective September 1, 1996, the Commission will refer any incident of
use by a licensee of the aforementioned device(s) in an illegal manner which is
detected after September 1, 1996 to the appropriate law enforcement agency for
criminal prosecution and will initiate an appropriate administrative disciplinary
action.


This notice is intended to make licensees aware of the agency's position and to
afford an opportunity to licensees for voluntary compliance.


(Emphasis added). The letter was signed by the Commissioner's Security Director. 


The follow-up letter stated:


[T]he agency received complaints regarding the use of "Eight liners" at locations
where Bingo is being conducted.


Based on a follow-up of those complaints, the agency considers these "eight-liners"
at those locations to be gambling devices, as a result of the method of operation and
payoff of those machines.


The purpose of the August 15, 1996 letter was to notify licensees of the agency's
position and to afford licensees an opportunity for voluntary compliance.


We have received numerous calls since the August 15, 1996 letter was sent. To
help you determine whether an "Eight-liner" located in your Bingo location is not
an amusement machine . . . the agency's position is that the "Eight-liner" is a
gambling device . . . and is therefore illegal. Even if the answer to every question
is "no," the agency cannot guarantee that the use of the "Eight-liner" is necessarily
legal.


We hope this helps answer questions you may have in regards to this issue. Please
contact [the Security Director] should you have any further questions.


(Emphasis added.)
11. We must uphold a correct lower court judgment on any applicable legal theory, even if the
court gives an incorrect reason for its judgment. Guaranty County Mut. Ins. Co. v. Reyna, 709
S.W.2d 647, 648 (Tex. 1986).




M>, Helco Prods. Co. v. McNutt, 137 F.2d 681, 684 (D.C. Cir. 1943). 
Considering the number of bingo-parlor licensees and the variety of ways in which eight-liners can
be configured, the practical value of the letters is obvious. Nothing in the letters purports to
foreclose an individual licensee from seeking, if he wishes, a formal opinion from the Commission
regarding particular eight-liners. While private parties may voluntarily comply with such
guidelines, they are not legally bound to do so.
10. The first Commission letter stated:


TO ALL BINGO LICENSEES:


The Texas Lottery Commission has received complaints regarding the use of
gambling devices at locations where bingo is being conducted. The specific
complaints concern the operation of devices popularly known as "Eight Liners."


The Texas Lottery Commission considers these devices to be gambling devices as
defined by Section 47.01(4) of the Texas Penal Code, as a result of the method of
operation and payoff of these devices.


Please be aware that Section (11(k)) of the Bingo Enabling Act, Texas Revised Civil
Statutes Article 179d, provides the following: "A game of chance other than bingo
may not be conducted or allowed during an occasion when bingo is played. This
subsection does not prohibit the exhibition and play of an amusement machine that
is not a gambling device as defined by Section 47.01, Penal Code."


Therefore, effective September 1, 1996, the Commission will refer any incident of
use by a licensee of the aforementioned device(s) in an illegal manner which is
detected after September 1, 1996 to the appropriate law enforcement agency for
criminal prosecution and will initiate an appropriate administrative disciplinary
action.


This notice is intended to make licensees aware of the agency's position and to
afford an opportunity to licensees for voluntary compliance.


(Emphasis added). The letter was signed by the Commissioner's Security Director. 


The follow-up letter stated:


[T]he agency received complaints regarding the use of "Eight liners" at locations
where Bingo is being conducted.


Based on a follow-up of those complaints, the agency c