**SILVER KING MINES, INC., and K. L. Stoker, Plaintiffs,**

**v.**

**Manuel F. COHEN, Byron D. Woodside, Hugh F. Owens, Hamer H. Budge, Francis M. Wheat, Commissioners of the United States Securities and Exchange Commission, Defendants.**

**No. C 69–65.**

United States District Court
D. Utah,
Central Division.

Dec. 14, 1966.

Dan S. Bushnell, Salt Lake City, Utah, for plaintiffs.

G. Gail Weggeland, Salt Lake City, Utah, for Securities and Exchange Commission.

Walter P. North, Associate General Counsel, Securities and Exchange Commission, Washington, D. C., for defendants.

## AMENDED DECREE

CHRISTENSEN, District Judge.

The court, in its decree dated the 5th day of October, 1966, having expressly retained jurisdiction to extend, limit or modify upon motion made by any party within a reasonable time and the defendants having promptly filed a motion to alter or amend said decree and the plaintiffs having filed a response in opposition thereto; said motion was heard in open court on the 14th day of November, 1966, and the court now being fully advised

The decree dated the 5th day of October, 1966, is hereby amended as below set forth and it is now by the court hereby ordered, adjudged and decreed:

The defendants and those acting under them are hereby enjoined until the further order of the court from instigating by means of press releases or similar instigation concerning Silver King Mines, Inc., K. L. Stoker, or companies promoted or controlled by K. L. Stoker, publicity pertaining to the commencement of judicial proceedings for the enforcement of administrative subpoenas, or pertaining to injunction proceedings prior to the issuance of temporary restraining orders or preliminary injunctions by a court; and said defendants and those acting under them are further enjoined from similarly instigating publicity involving administrative hearings or proceedings concerning the plaintiffs or companies promoted or controlled by K. L. Stoker, unless and until and then only to the extent that the Securities and Exchange Commission has reason to believe that there has been a violation of law within its cognizance by said parties or companies and that the public welfare requires such publicity in connection with a public proceeding before the Commission.

The foregoing decree shall not, however, enjoin the defendants or those acting under them from responding to inquiries from the press or other news media, including the furnishing of copies of papers which are of record in public files relating to any judicial proceeding or administrative hearing or proceeding to which any such inquiry relates, providing such inquiries are not prompted or suggested by the defendants or those acting under them.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

The above entitled matter came on for trial on the 22nd day of June, 1966, before A. Sherman Christensen, United States District Judge; after receipt of oral and documentary evidence and the respective arguments of counsel and the consideration of the briefs submitted by the respective parties, and the court being fully advised in the premises, the court makes the following:

## FINDINGS OF FACT

1. This is an action for an injunction to enjoin the defendants as Commissioners of the Securities and Exchange Commission from instigating adverse publicity involving the plaintiffs without prior adjudication.

2. Most of the following are uncontroverted facts which were stipulated in the pre-trial order. Some, however, are based on the matters entered into evidence at the trial.

a. K. L. Stoker is a resident of Salt Lake City, Utah, and is President of Silver King Mines, Inc., a Nevada corporation, and was President of Shasta Minerals & Chemical Company, also a Nevada corporation which was merged into Silver King Mines, Inc., on June 30, 1965. The defendants are the presently existing Commissioners of the United States Securities and Exchange Commission.

## SAN DIEGO PROCEEDINGS

b. On April 24, 1961, Shasta Minerals and Chemical Company filed a Registration Statement with the defendant Securities and Exchange Commission for a proposed public offering of stock of the Company. After numerous conferences, consultations and communications between the parties, proposed amendments to the Registration Statement were filed. Prior to the effective date of the Registration Statement, on November 9, 1961, defendant entered an order for a stop-order hearing suspending the effectiveness of the Registration Statement and providing for a hearing to be held at San Diego, California. Consolidated with that hearing was an administrative proceeding involving the broker-dealer registration of Cascade Corporation, a corporation wholly owned by Mr. Stoker.

c. In conjunction with the commencement of the San Diego proceedings, Mr. Orval L. DuBois, Secretary for the Commission, in accordance with the usual procedure involving public administrative hearings, prepared for "immediate release" a news release dated November 14, 1961, wherein it recited the staff's charges that there had been violations of the "registration and anti-fraud provisions of the Federal Securities Law"; that the Company and its president Mr. Stoker had "engaged in acts, practices and a course of business which would and did operate as a fraud and deceit"; that they had "made false and misleading statements" as shown in Exhibit A, attached to the plaintiffs' pleadings. As a result of the foregoing news release, there was publicity in the newspapers; one such newspaper article is marked Exhibit B and attached to the plaintiffs' pleadings. The newspaper article referred to the hearing as involving "charges of malpractice in the sale of mining stock", and after identifying the companies and Mr. Stoker, referred to the charges in the news release as involving questions of "fraud and deceit".

d. The hearing commenced on November 27, 1961, and continued through December 5, 1961. Approximately fifty witnesses were subpoenaed for the hearing and eighteen of such persons testified. The transcript of testimony consisted of 1,756 pages. After the submitting of briefs, the matter was argued before the Commission on July 31, 1962. No decision was ever rendered by the Commission on the charges contained in the original orders for the hearing. The matter was held under advisement by the Commission for approximately two years and four months, until November 24, 1964, when a negotiated settlement was consummated under which Shasta agreed to withdraw and the Commission agreed to permit Shasta to

withdraw the registration statement which had never become effective and the stop-order proceeding was discontinued, and Shasta agreed to and did make an up-to-date list of its stockholders available to the Commission and the Commission's suit, which was then pending in this court to compel Shasta to obey a Commission subpoena calling for the production of such a stockholders' list, was thereupon dismissed. In addition, under the terms of the settlement, which are set forth in Exhibits 3 and 4 attached to defendants' answer herein, Cascade Corporation and plaintiff Stoker consented to a finding that Cascade Corporation aided and abetted by plaintiff Stoker willfully violated Section 17 (a) of the Securities Exchange Act of 1934 and Rule 17a–5 thereunder (17 CFR 240.17a–5), in that it failed to file the required reports of its financial condition for 1961, 1962 and 1963. Cascade Corporation and plaintiff Stoker further agreed, without admitting the violations charged in the original order for proceedings with respect to Cascade, that such order for proceedings was deemed amended to include a charge of the above violations. Cascade Corporation also consented to revocation of its broker-dealer registration and plaintiff Stoker consented to a finding that he was a cause of such revocation.

## KEYSTONE PROCEEDINGS

e. After discussions with staff members of the Commission in connection with the proposed public offering of stock by Shasta, a separate broker-dealer, Keystone Securities Corporation, was formed to be the underwriter of the proposed public offering. On June 19, 1962, approximately seven months after the commencement of the proceedings in San Diego, an application was filed with the Commission requesting a withdrawal of the registration of Keystone Securities Corporation as a broker-dealer. The Commission, instead of permitting the withdrawal to become effective by the lapse of time, commenced revocation proceedings against Keystone and its principal officer. Part of the charges asserted against Keystone were claims of alleged prior violations charged to Shasta and Mr. Stoker.

f. In conjunction with the commencement of these administrative proceedings, Mr. Orval L. DuBois, Secretary for the Commission, prepared a news release summarizing the charges made in the order for the revocation proceedings which included assertions that Shasta Minerals & Chemical Company and K. L. Stoker had made untrue statements of material facts in their registration statement and otherwise had violated the securities laws. Exhibit C attached to the complaint is a copy of such release.

g. Based upon the release, a newspaper article was published, Exhibit D, which discussed the charges made by the Commission's staff to the effect that the Shasta registration statement "contains false and misleading information".

h. Thereafter, ineffective attempts were made to have the Commission change the administrative proceedings to a private hearing instead of public. The proceedings were finally settled on a negotiated basis. Under the terms of the settlement which were set forth in Exhibits 8 and 9 attached to the defendants' answer herein, Keystone Securities Corporation and M. Russell Ballard, Jr., without admitting or denying the allegations made against them in the order for proceedings, consented to a finding that Ballard and Keystone Securities Corporation willfully violated Sections 7 and 10 of the Securities Act of 1933, that Keystone Securities Corporation, aided and abetted by Ballard, willfully violated Sections 15(b) and 17(a) of the Securities Exchange Act of 1934 and Rules 15b–8 and 17a–3 thereunder, that it was in the public interest to revoke Keystone's registration as a broker-dealer, and that Ballard was a cause of the revocation. Under the offer of settlement the Commission dismissed the charges of violations of Section 17(a) of the Securities Act of 1933 and Sections 10(b) and 15(c) (1) of the Securities

Exchange Act of 1934 and Rules 10b–5 and 15c1–2 thereunder.

## HAWAIIAN PROCEEDINGS

i. On October 24, 1962, an investigation order was issued by the Securities and Exchange Commission in the matter of Silver King Mines, Inc., and K. L. Stoker. Exhibit 10 attached to defendants' answer is a true copy of that order. Pursuant to that order, representatives of the Securities and Exchange Commission, on two separate occasions, November 2, 1962, and June 2, 1964, took testimony from Mr. Stoker and procured certain books and records and exhibits from the company. Although certain books and records were produced at the taking of Mr. Stoker's testimony in 1962 most of the other materials called for by the subpoena were not produced. (Laprade affidavit, June 3, 1966, ¶ 4, defendants' exhibit 19.) On July 7, 1964, the Securities and Exchange Commission procured the testimony of two directors and a stockholder in Philadelphia, Pennsylvania. On October 29, 1964, the Commission sought and commenced the taking of the testimony of two stockholders in Honolulu, Hawaii, John H. Peterson and Donald Jenks.

j. During May, 1964, mining engineers of the Commission inspected the properties of Silver King Mines, Inc., at Ely, Nevada, and were permitted to review drill logs, take samples, and observe the drilling and mining operations as well as the construction of a concentrating mill. However, the inspection was not as complete as was desired by the Commission's mining engineers and certain records were not physically present and available for examination at the mine site. In addition, counsel for Silver King Mines, Inc., imposed certain "ground rules" which had the effect of hindering a full and complete examination. (Higdon affidavit, June 1965, defendants' Exhibit 12.)

k. On January 15, 1965, a subpoena duces tecum was issued to Charles Y. Higashi, a director of Silver King Mines, Inc, and a resident of Honolulu, Hawaii, ordering him to appear on January 27, 1965, in Honolulu, Hawaii. Mr. Higashi, through his counsel, offered to appear and testify at the regional office of the defendant in San Francisco, California. However, the Securities and Exchange Commission declined to take the director's testimony if he were to be represented by Mr. Bushnell, counsel who had also represented Silver King and Mr. Stoker. Mr. Higashi then refused to testify not only on the ground that he should be permitted to be represented by Mr. Bushnell but also on the ground that the Commission's investigation and its insistence upon proceeding amounted to harassment. Mr. Jenks thereafter refused to testify further, such refusal being also based on this latter ground. On February 1, 1965, the Securities and Exchange Commission commenced an action in the United States District Court of Hawaii, civil number 2350, to compel the director Mr. Higashi to appear without being permitted to be represented by such counsel. At the time of the commencement of the proceedings, Mr. Arthur E. Pennekamp, Regional Administrator, San Francisco Regional Office, and attorney of record for the plaintiff in the action, prepared a news release, Exhibit F, and had copies of the same delivered to the local papers. In addition to delivering the news release to the local papers, Mr. Pennekamp also delivered to one of the papers at its reporter's request a copy of the pleadings filed with the court which referred to alleged violations of the registration and anti-fraud provisions of the federal securities laws, which issues were not to be decided in the subpoena enforcement proceedings and which have not been decided in any other hearings. The newspaper article, Exhibit E, identified Silver King Mines, Inc., and K. L. Stoker, and referred to charges that there had been violations of the anti-fraud provisions of the securities laws; that Silver King Mines, Stoker, and others had been offering and selling the stock of the company in violation of the laws; and that Stoker and others had made statements

to purchasers and prospective purchasers of Silver King Mines stock that were untrue and misleading.

l. The District Court in Hawaii ruled against the Securities and Exchange Commission holding that a director was entitled to be represented by company counsel, holding that the rule was valid but that application of it to a corporation and one of its directors was unreasonable. The District Court in Hawaii also ruled against both Higashi and Jenks on the issue of their refusal to testify because of alleged harassment of Silver King Mines, Inc., holding that they were not proper parties to assert that defense. That decision of the trial judge has now been affirmed by the Ninth Circuit Court of Appeals, Securities and Exchange Commission v. Higashi, 359 F.2d 550.

## IN GENERAL

m. The Commission has announced that proper publicity is an "important element in the overall law enforcement activities of the Commission" since it, among other things, "tends to inhibit unlawful activities in the purchase and sale of securities by those who may not wish to risk the threat of exposure or possible imposition of statutory sanctions". The clauses in quotations immediately above are partial excerpts from Section 161.03 of the Commission's Manual of Administrative Regulations, a section headed "Purpose of Publicity" and dealing with that subject generally, not dealing specifically with press releases announcing the commencement of litigation or of public administrative proceedings. As to public administrative proceedings, the Secretary of the Commission automatically prepares news releases at the time the order for the public hearing is issued. Once it has been determined that the administrative hearing will be public, the news release is issued automatically, without further consideration of public necessity vs. private harm. However, releases of the type complained of as to the public administrative proceedings against Shasta and Cascade in 1961 and against Keystone in 1962 are no longer permitted. Since the issuance of the secretary's directive of January 15, 1964, the policy of the Commission has been to issue only "bare bones" releases on such occasions, a policy which was codified into the Manual of Administrative Regulations later in 1964 at which time Section 161.05 was amended to provide that releases announcing such public administrative proceedings "will be limited essentially to an identification of the respondents, a brief reference to the general nature of the underlying charges, and an identification of the particular securities involved. The purpose is to give public notice of the proceeding while omitting any detailed recitation of the underlying charges which might subject the Commission to criticism based on the assertion that it 'tries its cases in the newspapers before the respondent has an opportunity to defend itself.' "

n. As to court proceedings, the policy of the Commission as announced in the September 1, 1958, version of its Manual was, in part, as follows:

"Litigation Releases. To achieve the maximum value of publicity in the case of litigation releases, carefully prepared releases should be ready for distribution to the Press simultaneously with the filing of a Court injunction action." Exhibit 27.

o. On October 15, 1964, this portion of the Manual was revised to read:

"*Litigation Releases*. Wherever possible, carefully prepared releases should be ready for distribution to the press simultaneously with the filing of a court injunction action." Exhibit 21. (Section 161.06 of Manual.)

p. While Section 161.06 of the Manual by its terms calls for a simultaneous press release only "with the filing of a court injunction action", it was formerly the practice to issue such releases incident to the filing of subpoena enforcement actions as was done with respect to the Higashi action. As of April 21, 1966, however, the Commission has changed its policy with respect to the issuance of litigation releases in connec-

tion with a subpoena enforcement proceeding arising out of a private investigation. The present policy is that no release or other announcement is to be made when a court action is commenced to enforce compliance with a Commission subpoena issued in the course of a private investigation unless otherwise authorized or directed by the Commission. In addition, present policy provides that if in a particular case the Commission staff believes that a release should issue announcing the commencement of a subpoena enforcement action the staff's memorandum to the Commission recommending the filing of the action must include a further recommendation to that effect with supporting reasons as to why such announcement is deemed necessary. (Defendants' exhibit 17.)

q. The litigation release involving the Shasta subpoena enforcement action in this court and the release involving the Hawaiian proceedings were issued automatically in compliance with the then policy of the Commission and without regard to public necessity vs. private harm.

r. The investigation involving the plaintiffs has not been terminated and will continue in the future.

3. The contested issues of fact reserved by the pre-trial order were as follows:

a. Was the Commission's action in any one or more of the instances mentioned in the uncontroverted facts so arbitrary and unreasonable as to amount to an abuse of discretion?

b. If it is determined that the Commission has in the past acted so arbitrarily and unreasonably as to constitute an abuse of discretion, will such conduct continue in the future in the absence of a protective injunction, or stated differently, is injunctive relief proper and necessary?

c. Do the plaintiffs have a full, complete, and adequate remedy at law and have they suffered irreparable injury?

d. If such publicity were to continue in the future, would the plaintiffs, as a result thereof, suffer irreparable injury?

4. After the first phase of the investigation involving Silver King Mines, Inc., represented by the procuring of testimony and documents on November 2, 1962, no injunctive proceedings or administrative proceedings were commenced. The second phase of the Silver King investigation commenced approximately eighteen months later with the taking of testimony and procuring of records on June 2, 1964. Just preceding the procuring of this testimony, mining engineers had inspected the properties of the company in and around Ely, Nevada. During July of 1964, testimony of two directors and stockholders was taken in Philadelphia, Pennsylvania. At about this same time, a financial statement of the company was submitted to the Commission. After procuring and reviewing this information, no action or proceedings were taken by the Commission against the plaintiffs. A third phase of the investigation was commenced in the fall of 1964, and because of intervening litigation, the same has not yet been completed.

5. The Commission weighs on a "case by case" basis whether an administrative proceeding brought under the Securities Exchange Act should be public or private. This weighing process consists of a consideration of the possibility of injury to private interests as a result of making its charges public against the need to protect the public from engaging in securities transactions without relevant information or on the basis of false or incomplete information. The Commission does not weigh on a "case by case" basis whether an administrative proceeding brought under the Securities Act of 1933 should be public or private, since Section 21 of the Act requires that all such proceedings be public. However, aside from the determination of whether proceedings in general should be public or private, there has been no "case by case" weighing of public necessity for publicity as against the potential private harm which might

arise therefrom; no consideration has been given to the technical nature of the proceedings or actions; and the publicity has not been issued only at the "end of the investigation" as maintained by the defendants. In each of the instances, San Diego Hearing, Keystone Proceedings, and Hawaiian Proceedings, the news releases were issued automatically and routinely pursuant to the policy of the defendants as contained in the Commission's Manual of Administrative Regulations. In the issuance of such releases, the Commission did not give consideration to any questions of public justification, as contrasted to potential private harm. There was, in fact, no sufficient public justification, when compared to the potential harm to the individual, to warrant the instigation of such publicity as mentioned above.

6. In the San Diego and Keystone Proceedings, the news release prepared by the Commission went into considerable detail concerning the underlying charges and assertions being made by the Commission. Although the news release involving the Hawaiian Proceedings did not go into detail concerning these assertions, the Commission did go into detail concerning the underlying charges and basis of the investigation in its application filed with the court, even though such matters were not directly involved or issues to be decided by the court, and such application was then delivered to the press, resulting in adverse publicity to the plaintiffs. Although the plaintiffs were not parties to the Keystone Proceedings or the Hawaiian Proceedings, they, nevertheless, received the brunt of the adverse publicity originating from the news release in the Keystone matter and the application filed with the court in the Hawaiian (Higashi) Proceedings. The instigation of publicity under such circumstances was arbitrary and unreasonable, and amounted to an abuse of discretion.

7. The Commission's news release announcing the commencement of the Higashi subpoena enforcement proceeding was issued after the change in policy on news releases and was of a more reasonable character than the other releases, noting merely that a subpoena enforcement proceeding had been instituted, naming Mr. Higashi and relating that his proposed testimony was to be taken in connection with an investigation of the sale of Silver King stock.

8. The Commission has changed its policy to eliminate a detailed recitation of underlying charges in its news releases and in providing that a news release will not automatically be issued simultaneously with the filing of a suit for judicial enforcement of an administrative subpoena arising out of a private investigation. This change of policy does not prohibit the use of such publicity, but requires that prior approval be secured from Washington. The problem of publicity involving these parties has been a matter of contention on repeated occasions, commencing as early as December 3, 1962, and culminating in this lawsuit. The last change of policy made by the Commission pertaining to subpoena enforcement actions was made only approximately two months prior to the trial of this case.

9. The plaintiffs have been irreparably damaged by the unwarranted publicity as aforesaid. Future publicity of the same character may likewise cause the plaintiffs irreparable injury and damage.

10. The defendants in revising their procedures and policy as mentioned above have reduced but not eliminated the possibility of similar unwarranted publicity and especially because of feeling against the plaintiffs and their representative growing out of the latter's intransigent resistance to investigation demands, there is danger of recourse to similarly unwarranted publicity in the future in the absence of injunctive protection.

Based upon the foregoing Findings of Fact and in view of the governing legal

and equitable principles and considerations, the court now makes the following:

## CONCLUSIONS OF LAW

1. This court possesses jurisdiction over the subject matter of this action by virtue of 28 U.S.C. Sections 1331, 1337.

2. The granting of an injunction to prevent arbitrary action of an administrative agency in violation of the due process provisions of the United States Constitution and infringing upon the rights, privileges and immunities secured by the Constitution, when there is no adequate and complete remedy otherwise, is authorized by the inherent equity jurisdiction conferred upon United States District Courts by the Constitution.

3. The issuance of publicity is not the type of agency action which may result in a final order or otherwise be subject to review in connection with a final judgment or order in the usual sense thus calling into application the ordinary review provisions of the Administrative Procedures Act or other statutes. Under such circumstances, injunctive proceedings traditionally have been, and should be in this case, the means by which essential judicial review is made available. Such review is not precluded by the Administrative Procedures Act, but on the contrary its propriety under these circumstances is thereby recognized.

4. The authority of the United States Securities and Exchange Commission, and the defendants acting in their official capacity as Commissioners, reasonably to issue public news releases announcing the commencement or progress of administrative proceedings is granted by statute in specified respects and may be implied otherwise from the nature of the Commission's functions and the exercise of its proper discretion in this respect may not be reviewed by the court; however, an unlimited or absolute discretion has not been granted to the defendants with reference to publicity; and publicity which is arbitrary, capricious and unreasonable or for the purpose merely of bringing pressure to bear upon those involved in administrative or judicial proceedings in which the Commission is involved irrespective of any public administrative or judicial finding and as a general enforcement policy, is beyond any grant of discretion or power to the Commission.

5. The defendants have issued, or have authorized the issuance of, publicity not justified by any pending judicial or administrative proceeding and constituting under the circumstances unwarranted, arbitrary, capricious and unreasonable publicity for the purpose of bringing pressure to bear upon those involved in administrative or judicial proceedings and without reference to any actual violation of the Securities and Exchange Act or other justification, to the irreparable injury of the plaintiffs as more fully appears from the foregoing Findings of Fact; and unless restrained by order of the court may continue such conduct to the irreparable injury of plaintiffs.

6. Such conduct and this action have not been rendered moot by the change in the rules and regulations of the Commission pendente lite, although the reflected change has been salutary and has decreased the danger of a renewal of such publicity. Despite such change, the necessity and propriety of injunctive relief continues, especially in view of the position of the Commission that its prior conduct to the extreme heretofore exercised is beyond the judicial power to prevent, and in view of the authorization retained within the framework of its present rules to renew such conduct in its extreme.

7. The plaintiffs have no full, adequate and complete remedy at law.

8. The framing of an injunction to afford reasonable protection to the plaintiffs in this sensitive area without interference with the legitimate functions and discretion of the Commission and those acting under it is difficult; but this would not justify the court to deny reasonable relief to which

the plaintiff is believed to be entitled. In framing such relief the court must be mindful also of the contentions of the plaintiff for entitlement to relief beyond that which the court believes it can or should grant and the danger of attempted extension of unrestricted language to preclude a proper and necessary discretion; also of the contentions of the defendants that they are subject to no judicial control concerning publicity instigated by the Commission concerning citizens and the danger of their unwarranted minimization of general language in any restraint. The court is also mindful of the necessity of reasonable specificity within the principle of B. & C. Truck Leasing, Inc. v. I. C. C., 283 F.2d 163 (10th Cir. 1960), and cases cited therein, and has concluded in view of all of these considerations that the provisions hereinafter set out are reasonable, subject to a consideration of such extensions, limitations or modifications within the court's retained jurisdiction as may appear proper should the parties, despite the extreme positions heretofore maintained, desire to give the court the benefit of their further views as to the most appropriate form of injunctive relief within the general area, context and spirit of these conclusions.

9. The plaintiffs are entitled to a decree enjoining the defendants and those acting under them until the further order of the court from instigating by means of press releases or similar instigation concerning Silver King Mines, Inc., K. L. Stoker, or companies in which said Stoker is an officer or director, publicity pertaining to the commencement of judicial proceedings for the enforcement of administrative subpoenas, or pertaining to injunction proceedings prior to the issuance of temporary retraining orders or preliminary injunctions by a court and said defendants and those acting under them are further enjoined from similarly instigating publicity involving administrative hearings or proceedings concerning the plaintiffs or other companies in which said Stoker is an officer or director, unless and un-

til and then only to the extent that the Securities and Exchange Commission has reason to believe that there has been a violation of law within its cognizance by said parties or companies and that the public welfare requires such publicity in connection with a public proceeding before the Commission.

10. The court should expressly retain jurisdiction to extend, limit or modify this injunction upon the motion of any party within a reasonable time.

Let a decree in harmony with these conclusions be entered.