### SECURITIES AND EXCHANGE COMMISSION, Plaintiff,

### v.

### REPUBLIC NATIONAL LIFE INSURANCE CO. et al., Defendants.

### No. 74 Civ. 1097 (MP).

United States District Court,
S. D. New York.

Oct. 18, 1974.

See also, D.C., 378 F.Supp. 430.

Gary N. Sundick, John S. Stoppelman, David J. Romanski, and Frederick L. White, Washington, D.C., of counsel, for Securities and Exchange Commission.

Cahill, Gordon & Reindel, New York City by William E. Hegarty, Mathias E. Mone, and Michael P. Tierney, New York City, of counsel, for defendant Peat, Marwick, Mitchell & Co.

## MEMORANDUM

POLLACK, Distict Judge.

This is a Rule 12 motion by the SEC to dismiss the counterclaim of Peat, Marwick, Mitchell & Company ("PMM") on the ground that the court lacks jurisdiction over the subject matter of the claim.

The counterclaim concerns the alleged obligation of the SEC to release to independent public accountants upon their inquiry information obtained by the SEC which would be material to the accountants' examinations of financial statements required by statute to be filed with the SEC.

With respect to PMM, the SEC complaint concerns the 1970 through 1972 financials filed by Republic which were allegedly materially false and misleading. The SEC alleges *inter alia* that by letter dated October 30, 1970, the Commission on Valuation of Securities of the National Association of Insurance Commissioners had advised Republic that its staff recommended that the Realty debentures he valued at NO **, a lower rating than the previous NO *, for statutory purposes at December 31, 1970. (Am. Compl., ¶ 32) PMM asserts that this information, which the SEC apparently considers material, was withheld from PMM by the SEC despite PMM's request for any material information concerning Republic made at a time when PMM was examining Republic's 1973 financials. PMM had previously withdrawn its reports on Republic's prior financials, as well as notified Republic that significant potential losses existed in its investment portfolio which would require adjustments in both the 1973 and prior financial statements. PMM continued to work on Republic's 1973 financials at the request of the SEC, and PMM submitted its report on April 12, 1974.

PMM's counterclaim thus seeks an order permanently enjoining the SEC from withholding from independent public accountants information concerning their clients which may be material to an accountant's examination of statutory financial statements and the accountant's report which accompanies them.

Neither the SEC nor PMM discuss whether the counterclaim is compulsory or permissive under Rule 13. The SEC complaint deals only with the 1970

through 1972 statements, while the PMM counterclaim concerns the 1973 financials. Thus it could be said that the counterclaim is not compulsory since it does not arise out of the same "transaction or occurrence". If the counterclaim is permissive, then the court has a certain amount of discretion to decline to hear the counterclaim if it would unduly complicate the litigation. 6 C. Wright and A. Miller, Federal Practice and Procedure, § 1420, at 115 (1971). Separate trials would be a possible means of avoiding complications if the claim were joined. *Id.* The SEC does argue that it is vital that defendants not be permitted to delay or disrupt an enforcement proceeding by maintaining a counterlaim.[1]

Both the SEC and PMM have cited numerous cases on whether and when a court has jurisdiction to review an agency's exercise of discretion. The cases cited present "judicial review" of agency action in a wide variety of contexts, such as immediate review when review would ultimately be available by statute, *e.g.*, Wolf Corp. v. SEC, 115 U.S.App. D.C. 75, 317 F.2d 139, 141 (1963) (motion to enjoin stop order proceeding), review of an agency's motivation in invoking the process of the court to enforce a subpoena, SEC v. Brigadoon Scotch Dist. Co., 480 F.2d 1047, 1056 (2d Cir. 1973), cert. denied, 415 U.S. 915, 94 S.Ct. 1410, 39 L.Ed.2d 469 (1974), or as in the present case, review of an agency action which does not constitute an "order" subject to statutory review. *E.g.*, Silver King Mines, Inc. v. Cohen, 261 F.Supp. 666 (D.Utah 1966) (issuance of allegedly harmful press releases).

 In a case such as this, the question of jurisdiction necessarily shades into consideration of the claim on the merits. If the agency or officer is acting within the limits of the discretion conferred by Congress, then there is no

jurisdiction. *See, e.g.,* International Waste Controls, Inc. v. SEC, 362 F. Supp. 117 (S.D.N.Y.1973), aff'd per curiam, 485 F.2d 1238 (2d Cir. 1973). Similarly, if the agency or officer has exceeded its authority, then courts have jurisdiction to review. *See, e.g.,* Joint Anti-Facist Refugee Committee v. McGrath, 341 U.S. 123, 139–140 & n.13, 71 S.Ct. 624, 95 L.Ed. 817 (1951) (Attorney General exceeded authority conferred by executive order: injunctive relief granted); Silver King Mines, Inc. v. Cohen, 261 F.Supp. 666, 674 (D.Utah 1966) (publicity beyond any discretion or power granted to the commission: injunctive relief granted). Simply stated, a court may restrain an agency when it exceeds the limits of its authority, but may not influence an agency's exercise of discretion within the proper sphere of its authority.

In this context, whether a complaint is dismissed for lack of subject matter jurisdiction or for failure to state a claim "is of no great consequence". *See* M. G. Davis & Co. v. Cohen, 256 F.Supp. 128, 135 (S.D.N.Y.1966), aff'd, 369 F.2d 360 (2d Cir. 1966) (suit to restrain SEC from conducting an administrative hearing dismissed).

Thus the dispute between the SEC and PMM comes down to whether or not the SEC's decision not to release the information to PMM was within its statutory authority, rather than to the applicable law as to jurisdiction to review.

The heart of the SEC's position is thus that it was acting within the scope of the discretion committed to it by Congress and that its action is therefore not subject to judicial review.

Section 21(a) of the Exchange Act, 15 U.S.C. § 78u(a) provides that: "The Commission may, in its discretion, make such investigation as it deems necessary to determine whether any person has violated . . . any provision of this

---

[1]. If the counterclaim is permissive, then the problem of independent subject matter jurisdiction as a threshold matter also arises. PMM does not state what its primary juris- dictional base is, but suggests that either mandamus, 28 U.S.C. § 1361, or t'e Freedom of Information Act, 5 U.S.C. § 552 supports jurisdiction.

chapter . . . [and] [t]he Commission is authorized in its discretion, to publish information concerning any such violations . . . "[2]

17 CFR § 240.0–4 provides that information or documents obtained pursuant to a § 21(a) investigation shall be deemed confidential and may not be released unless such release is authorized by the Commission as not being contrary to the public interest. *See generally* LaMorte v. Mansfield, 438 F.2d 448 (2d Cir. 1971) (release by Commission of transcript of his own testimony to a witness).

Professor Loss has recognized some of the problems involved in the exercise of this discretion.

> Even if one assumes the strict legality of making information available to certain persons without publication generally, there is of course, a serious policy question. The Commission is torn when, for example, a registration statement is about to become effective and the issuer itself is apparently unaware of facts adduced in a private investigation, perhaps of the underwriter or accountant or other persons having some connection with the offering. There have been instances in which the Commission has opened parts of its private investigatory files in the interest of avoiding a deficient or misleading registration statement. 6 L. Loss, Securities Regulation, 4079–80 (2d supp.1969).

Loss also notes that the Commission has employed its discretionary power to publish information concerning violations sparingly. 3 Loss, at 1947 (2d ed. 1961). The SEC has not indicated any reason in particular for declining to release information in this case.[3]

PMM consistently argues that the SEC has acted in violation of the letter and spirit of the federal securities laws without really getting down to, as the SEC points out, a precise statement of the basis of illegality. *See* Delaware Valley Conservation Association v. Resor, 269 F.Supp. 181, 184–85 (M.D.Pa. 1967), aff'd 392 F.2d 331 (3d Cir.), cert. denied 393 U.S. 915, 89 S.Ct. 239, 21 L. Ed.2d 200 (1968) (affirmative allegations of relevant statutory provisions required).

In order to establish illegality by the SEC, PMM seems to rely initially on both official and unofficial pronouncements by the SEC of its willingness to cooperate fully with public accountants in light of the heavy public duties imposed upon accountants by the securities laws, as well as the admonitions by the SEC that it cannot work with accountants in an adversary atmosphere. *See, e.g.,* In the Matter of Arthur Andersen & Company, 4 CCH Fed.Sec.L.Rep.; ¶ 72,179, at 62,411; Remarks of Commissioner Loomis, BNA Sec.Reg. & L.Rep., No. 259, at D–3 (July 3, 1974). These pronouncements do not, however, necessarily limit the scope of the SEC's discretion.

Similarly, PMM argues that the SEC's decision to withhold the information is inconsistent with the underlying policy of full disclosure expressed by Congress in the Exchange Act. However, this argument overlooks the fact that at least some non-disclosure is implicit in the Congressional grant of discretion in § 21(a).

---

2. PMM argues that the SEC's assumption that PMM seeks only investigative material is wrong, but PMM's distinction between "investigative" and other information which the SEC might obtain seems to be a semantic one at best.

3. The one case involving the SEC's liability for publishing information cited by the SEC, Schmidt v. United States, 198 F.2d 32 (7th Cir. 1952), cert. denied, 344 U.S. 896, 73 S. Ct. 276, 97 L.Ed. 693 (1956) (disclosure both of impending investigation and investigative information), involved a suit under the Tort Claims Act. As pointed out by PMM, the utility of the dismissal for failure to state a claim on the ground that the exercise of discretion was involved is limited, both because it was a suit for damages rather than for an injunction and because it involved the discretionary act exception of the Tort Claims Act which extends to abuse of discretion, as well as discretion within the meaning of § 21(a).

In what is potentially its strongest argument, PMM states that there is no reasonable justification whatever for the SEC's decision to withhold the information and that the decision is therefore an abuse of discretion since it is arbitrary. PMM points out that it was encouraged by the SEC to continue its examination of Republic's 1973 financials for the very reason of providing the public with complete and accurate information. This argument, however, really raises the policy dilemma pointed out by Professor Loss, with its implication that a court should not interfere with the SEC's exercise of discretion in such cases.

PMM also suggests that the SEC's only motivation for withholding the information was the impermissible one of gaining an adversarial advantage at the expense of the public interest in disclosure. However, PMM overlooks the fact that the SEC was investigating PMM's failings with respect to the 1970 through 1972 financials, and the SEC may have concluded that the public interest would be better served by an adversarial advantage in the enforcement proceeding than by additional disclosure in the 1973 financials. Moreover, PMM does not assert a malevolent intent which rises to the level of that alleged in *Schmidt, supra.*

■ The SEC's second argument is that a defendant in an enforcement action may not maintain a counterclaim against the Commission since the Commission may not be sued *eo nomine.* The latter proposition is correct, Holmes v. Eddy, 341 F.2d 477 (4th Cir.), cert. denied, 382 U.S. 892, 86 S.Ct. 185, 15 L. Ed.2d 149 (1965), reh. denied, 383 U.S. 922, 86 S.Ct. 881, 15 L.Ed.2d 678 (1966), cited with apparent approval in NLRB v. Nash-Finch Co., 404 U.S. 138, 146 n.4, 92 S.Ct. 373, 30 L.Ed.2d 328 (1971), but the Commission may be sued in effect by joining the individual commissioners in their official capacities. *Compare* M. G. Davis & Co. v. Cohen, 369 F.2d 360, 361 n.1 (2d Cir. 1966) *with* M. G. Davis & Co. v. SEC, 252 F.Supp. 402, 403 (S.D. N.Y.1966). In Koss v. Securities and Exchange Commission, 364 F.Supp. 1321, 1327 n.14 (S.D.N.Y.1973), the court concluded that the *eo nomine* objection was frivolous since the individual commissioners could be readily joined under Rule 19, the position taken by PMM.

■ The SEC asserts that the counterclaim may only be brought as an original action against the commissioners, citing the general rule that third parties may not be joined on a counterclaim when the counterclaim is asserted only against them and not against any of the original parties. *See, e.g.,* United States v. Zashin, 160 F.Supp. 843 (E.D. N.Y.1958); 6 C. Wright and A. Miller, Federal Practice and Procedure, § 1435 (1971). Although the *eo nomine* doctrine technically bars assertion of the counterclaim against the SEC itself, PMM argues that the SEC position exalts form over substance and contravenes the basic policy in favor of adjudicating related claims in a common tribunal. The SEC, as indicated above, asserts the harm to the public interest resulting from any delay in the enforcement action caused by the counterclaim. To the extent that the PMM counterclaim does not really arise out of the same set of facts as the SEC complaint, there is merit in the SEC position.

■ Returning to the underlying question on the counterclaim, does the scope of the discretion granted by Congress extend to the withholding of information in this case, the answer must be an affirmative one. Accordingly, this court lacks jurisdiction to review the SEC's exercise of discretion.

To say that this court lacks subject matter jurisdiction over the counterclaim, however, is hardly to say that this court condones as a matter of policy the course of action pursued by the SEC in this case.[4] Unless the SEC's pronounce-

---

4. PMM notes that Westheimer, Fine, Berger & Co. made a similar inquiry to the SEC and was similarly rebuffed, as described in the Farber Affidavit, ¶¶ 21–24, 35–36.

ments of cooperation with public accountants in the interest of providing full and understandable disclosure to the investing public are to be taken as mere exercises in public relations, the SEC must genuinely indicate that cooperation is indeed a two-way street. Surely the SEC would not choose to have accountants judge it by the precept "do as I do, not as I say".

Counterclaim and Fourth Affirmative Defense dismissed accordingly.

So ordered.