**TABBY'S INTERNATIONAL, INC.,** Petitioner,

v.

**SECURITIES AND EXCHANGE COMMISSION,** Respondent.

No. 72–3284.

United States Court of Appeals, Fifth Circuit.

June 5, 1973.

Richard B. Marx, Miami, Fla., for petitioner.

Mark Q. Connelly, Theodore Sonde, Securities & Exchange Commission, Washington, D. C., for respondent.

Before BELL, GOLDBERG and SIMPSON, Circuit Judges.

PER CURIAM:

This is a petition for review of an order entered by the Securities and Exchange Commission pursuant to Rule 261 of Regulation A under the Securities Act of 1933 permanently suspending the exemption from registration with respect to the offering of securities by petitioner, Tabby's International, Inc. The order is affirmed on the basis of the SEC's opinion, which we attach hereto as an appendix.

Affirmed.

### APPENDIX

Securities Act Release No. 5283
[Caption omitted]

### FINDINGS, OPINION AND ORDER PERMANENTLY SUSPENDING REGULATION A EXEMPTION

Before the SECURITIES AND EXCHANGE COMMISSION:

Tabby's International, Inc. ("issuer"), a Florida corporation organized in 1969 for the purpose of engaging in the restaurant business, filed with us on June 25, 1969 a notification and an offering circular for the purpose of obtaining an exemption from the registration requirements of the Securities Act of 1933 pursuant to Section 3(b) thereof and Regulation A thereunder, with respect to a proposed public offering of 150,000 shares of its common stock at $2 per share. In April 1970 it filed a report on Form 2–A stating that the offering had been completed on November 19, 1969.

On May 12, 1971, we issued an order pursuant to Rule 261 of Regulation A temporarily suspending the exemption. The issuer requested a hearing, and following submission of a stipulation of facts entered into by it with our Division of Corporation Finance, the hearing examiner filed an initial decision. The examiner found, as alleged in the temporary suspension order, that as a result of the activities of the underwriter in the course of the offering, the offering

circular became materially false and misleading, the terms and conditions of Regulation A were not complied with, and the offering was made in violation of Section 17 of the Securities Act, and he concluded that the exemption should be permanently suspended. The issuer filed a petition for review and a brief in support thereof which presented objections to the examiner's conclusion.[1]

■ As found by the examiner on the basis of the stipulation, the offering was carried out by the underwriter in a fraudulent manner. The details of the underwriter's activities and the respects in which they caused the offering circular to be false and misleading and resulted in noncompliance with the terms and conditions of Regulation A are set forth in the examiner's findings which we adopt. In brief, prior to completion of the offering, the underwriter repurchased shares from nominees and others at prices substantially above the offering price and resold part of such shares; induced other broker-dealers to make a market in the issuer's stock at double the offering price; and offered yet other broker-dealers financial inducements to promote the stock. As a result of the failure to disclose these activities and the actual aggregate offering price resulting therefrom, the offering circular became false and misleading. Moreover, the offering exceeded the $300,000 limitation for Regulation A offerings then in effect, and the Form 2–A was inaccurate regarding, among other things, the completion date of the offering, the proceeds received from the public, and the underwriter's discount.[2]

It is stipulated that the issuer had no knowledge of the underwriter's fraudulent activities and had no reason to believe that the offering had not been completed on November 19, as reported to it by the underwriter. The issuer contends that since the record contains no evidence of wrongdoing on its part and involved activities over which it assertedly had no control, it is not in the public interest to suspend the exemption permanently, thereby exposing it to civil and criminal sanctions for violation of the registration provisions of Section 5 of the Securities Act. It asserts that in other cases involving more serious wrongdoing we have vacated temporary suspension orders. The issuer further argues that since it could not anticipate the underwriter's illegal activities, there is no basis for taking action against it based on nondisclosure of such activities in the offering circular which was accurate when it became "effective." Such action, it is urged, would amount to an *ex post facto* law prohibited by the United States Constitution and would violate due process. We cannot accept the issuer's arguments.

■ Where events occur or actions are taken in the course of an offering which render statements in the offering circular materially false or misleading, it is clearly improper to continue the offering without appropriate amendment of the circular.[3] The exemption provided by Regulation A is a conditional one bas-

1. The issuer's request for oral argument before us is hereby denied. In our opinion, the written submissions were adequate for dealing with the limited issue presented for our consideration.

2. In separate proceedings, the underwriter's broker-dealer registration was revoked and its president and vice-president were barred from association with any broker-dealer, investment advisor or investment company, on the basis of findings of violations of registration, antifraud and anti-manipulative provisions of the securities acts in connection with the offering of the issuer's stock. Those respondents consented to the sanctions and findings of violations, without admitting or denying the allegations in the order for proceedings. J. M. Kelsey & Co., Inc., Securities Exchange Act Release No. 9196 (June 4, 1971).

3. See Rule 256(e) under the Securities Act. *Cf.* S.E.C. v. Manor Nursing Centers, Inc., C.A. 2, 1972, 458 F.2d 1082 ("The effect of the antifraud provisions [of the securities acts] is to require the prospectus to reflect post-effective [developments] which make the prospectus misleading in any material respect.")

ed on strict compliance with express provisions and standards,[4] and its suspension is appropriate where they are not met. The issuer, in challenging the propriety of permanently suspending the exemption in the absence of a finding of culpability on its part, misconceives the nature of the exemption as well as of a suspension. A suspension of the exemption is not a sanction or a penalty,[5] but rather serves the remedial purpose of protecting investors by making the safeguards of a registration statement under the Securities Act a prerequisite for any further public offering of securities either by the issuer or the underwriter where there has been a failure to adhere to the conditions of the exemption. Accordingly, any reference to prohibition of *ex post facto* laws is entirely inapposite. Where as here the offering is permeated with fraud, we think a permanent suspension of the exemption as to the security in question is clearly required for the protection of investors, even though only the underwriter is the cause of noncompliance.[6] Contrary to the issuer's contention, the cases cited by it in which we vacated temporary suspension orders involved far less serious noncompliance.[7]

In summary, Rule 261 provides for the suspension of a Regulation A exemption if, among other things, the exemption was not, in fact, available, or the conditions of the exemption were not satisfied, or if the offering circular was false or misleading, or if fraudulent or manipulative practices were utilized in the offering. All of the above grounds for suspension are clearly present in this case. Consequently, suspension is proper since the exemption is not, and should not be, available under the circumstances, nor does the basis for suspension depend upon whether the issuer or the underwriter was the person at fault.

We recognize that suspension of a Regulation A exemption may have collateral consequences for, in this case, the issuer. If the issuer seeks to be relieved, in whole or in part, from these consequences, its remedy is to seek relief under Rule 252(f). In connection with such an application, the Commission could explore the degree of care exercised by the issuer in the selection of the underwriter and the extent, if any, to which the issuer kept itself informed about the activities of the underwriter in connection with the offering.[8] On the issue of suspension, it appears that the hearing examiner believed, we think correctly, that these issues were not relevant, and he did not examine them in his initial decision.

Accordingly, it is ordered, pursuant to Rule 261 of Regulation A under the Securities Act of 1933, that the exemption from registration with respect to the offering of securities by Tabby's International, Inc. be, and it hereby is, permanently suspended.

4. See Selevision Western, Inc., 37 S.E.C. 411, 415 (1956) ; Antilles Electronics Corporation, 41 S.E.C. 886 (1964) ; R. A. Holman & Co., Inc., Securities Exchange Act Release No. 7770, p. 15 (December 15, 1965), aff'd, 366 F.2d 446 (C.A. 2, 1966), opinion amended, 377 F.2d 665 (C.A. 2), cert. denied, 389 U.S. 991, 88 S.Ct. 473, 19 L.Ed.2d 482 (1967).

5. See Selevision Western, Inc., *supra.*

6. See Utah-Wyoming Atomic Corporation, 36 S.E.C. 454 (1955) ; R. A. Holman & Co., Inc., *supra.*

7. Mid-Hudson Natural Gas Corp., 38 S.E.C. 639 (1958) ; Automatic International, Inc., Securities Act Release No. 4719 (September 4, 1964) ; Baxter and Friedman as The Mandingo Company, Securities Act Release No. 4783 (June 4, 1965).

8. We do not, at present, express any view as to the responsibility of the issuer to exercise care in these matters, but this would be relevant to an application under Rule 252(f). Thus, the accuracy of the disclosure in the offering circular concerning the plan of distribution depends primarily on the manner in which the underwriter makes the offering, and the accuracy of the report on Form 2–A required to be filed by the issuer also depends, in part, upon the manner and progress of the distribution by the underwriter.

By the Commission (Chairman Casey, and Commissioners Owens, Herlong, and Loomis).

/s/ Ronald F. Hunt
Secretary