Cletus M. LYMAN, on behalf of himself and all others similarly situated

v.

STANDARD BRANDS INCORPORATED and Arthur Andersen & Co.

Civ. A. No. 73–882.

United States District Court, E. D. Pennsylvania.

Aug. 15, 1973.

Stuart H. Savett, Aaron M. Fine, Harold E. Kohn, P. A., Philadelphia, Pa., for plaintiff.

John G. Harkins, Jr., Jeffrey Charles Hayes, Patricia L. Freeland, Pepper, Hamilton & Scheetz, Philadelphia, Pa., for Standard Brands Inc.

Charles W. Boand, Wilson & McIlvaine, Chicago, Ill., Donald A. Scott, Morgan, Lewis & Bockius, Philadelphia, Pa., for Arthur Andersen & Co.

## OPINION AND ORDER

JOSEPH S. LORD, III, Chief Judge.

Plaintiff, a shareholder of Standard Brands Incorporated ("Standard Brands"), has brought this action pursuant to § 14(a) and § 20 of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78n and 78t, and Rule 14a–9 adopted by the Securities and Exchange Commission under Section 14(a), 17 CFR § 240.14a–9.[1] The gist of plaintiff's complaint is that a Standard Brands proxy statement dated March 22, 1973 and mailed to the shareholders was false and misleading in that it omitted to state certain material facts in the section en-

1. "§ 78n. Proxies

"(a) It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title."

"Rule 14a–9. False or Misleading Statements

"Reg. 240.14a–9. (a) No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading. (b) The fact that a proxy statement, form of proxy or other soliciting material has been filed with or examined by the Commission shall not

be deemed a finding by the Commission that such material is accurate or complete or not false and misleading, or that the Commission has passed upon the merits of or approved any statement contained therein or any matter to be acted upon by security holders. No representation contrary to the foregoing shall be made."

"§ 78t. Liabilities of controlling persons

"(a) Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

"(b) It shall be unlawful for any person, directly or indirectly, to do any act or thing which it would be unlawful for such person to do under the provisions of this chapter or any rule or regulation thereunder through or by means of any other person.

"(c) It shall be unlawful for any director or officer of, or any owner of any securities issued by, any issuer required to file any document, report, or information under this chapter or any rule or regulation thereunder without just cause to hinder, delay, or obstruct the making or filing of any such document, report, or information."

titled "APPOINTMENT OF INDE-PENDENT AUDITORS" which proposes shareholder ratification of the appointment by the Board of Directors of Arthur Andersen & Co. ("Andersen") as Standard Brands' independent auditors. The omitted facts are (1) that three members of Andersen's Oklahoma City office have been indicted in the Southern District of New York for violations of the securities laws and (2) that Andersen itself is named as an unindicted co-conspirator in the same indictment, hereinafter referred to as "the Four Seasons litigation." [2] Plaintiff seeks injunctive relief which would compel Standard Brands to supplement the proxy material to disclose these facts.

Plaintiff filed a motion for preliminary injunction, which we denied. He has since filed, pursuant to F.R.Civ.P. 56, a motion for partial summary judgment on all issues raised by his complaint save the form of relief to be granted. Standard Brands subsequently filed a cross-motion for summary judgment. The parties agree that there are no genuine issues of fact and we concur in their opinion; summary judgment is therefore appropriate. Since a resolution of the § 14(a) claims is dispositive of this case, we shall not pass on plaintiff's § 20 allegations.

The central issue plaintiff has placed before us is whether Standard Brands' failure to disclose the facts of the Four Seasons litigation constituted the omission of material facts which must be disclosed under Rule 14a–9. Defendants argue, however, that we need not reach the issue of materiality and advance two reasons for our abstention. The first is that Standard Brands was required to disclose in the section on the selection of auditors *only* that information called for by the Securities and Exchange Commission's Schedule 14A, Item 8, and that since it has done so, it has complied ful-

ly with the requirements of § 14(a). Item 8 provides that the proxy statement

"＊ ＊ ＊ shall name the auditors and describe briefly any direct financial interest or any material indirect financial interest in the issuer or any of its parents or subsidiaries, or any connection during the past three years with the issuer or any of its parents or subsidiaries in the capacity of promoter, underwriter, voting trustee, director, officer or employee."

There can be no doubt that the Standard Brands proxy statement set forth all the information required by Item 8. However, we find nowhere in § 14 nor in Schedule 14A any indication that Item 8 is either exhaustive or exclusive. The purpose of § 14(a), as implemented by Rule 14a–9, is "to prevent management or others from obtaining authorization for corporate action by means of deceptive or inadequate disclosure in proxy solicitation." J. I. Case Co. v. Borak, 377 U.S. 426, 431, 84 S.Ct. 1555, 1559, 12 L.Ed.2d 423 (1964). Item 8 is no more than a minimum. Even though the issuer of a proxy statement may have complied with its requirements, it is still held to the requirements of full and fair disclosure. Rule 14a–9 therefore applies to the selection of auditors and its scope is in no way restricted by the existence of Schedule 14A.

Defendants argue, however, that even if we conclude that Rule 14a–9 applies, the question of materiality is not an issue because no "statement" has been made about Andersen's integrity or competence and therefore the disclosure of the pending litigation is not "necessary in order to make the *statements* [in the proxy statement] not false and misleading." Rule 14a–9(a), *supra*, emphasis added. This argument places an exceedingly narrow construction on the word

**2.** Plaintiff also claims that Standard Brands violated Rule 14a–9 by not disclosing that Andersen is a named defendant in a number of lawsuits alleging securities violations. Plaintiff has left us entirely uninformed as to what this litigation against Andersen might be and has offered no proof that would even indicate its existence. We therefore deal only with defendant's failure to discuss the Four Seasons litigation in the proxy statement.

"statement" which is at variance with the broad remedial purposes of § 14(a) and Rule 14a–9. The section of the proxy statement on the appointment of auditors does not exist *in vacuo*: it carries with it an implied statement, made more explicit by the indication on the proxy card that management favors ratification, that Andersen possesses a general fitness to perform the tasks expected of an independent auditor. A shareholder would and, if the directors have fulfilled their fiduciary duty to the corporation, should conclude that the Board did something more than pick an auditor at random, paying no attention to competence or integrity. The word "statement" must be interpreted flexibly, *see* SEC v. May, 134 F.Supp. 247, 252 (S.D. N.Y.1955, Lumbard, Cir. J.), aff'd, 229 F.2d 123 (C.A. 2, 1956); the implication of the paragraph at issue here certainly falls within all but an unacceptably restrictive construction of the term.

We therefore reach the question of whether the proxy statement omitted to state material facts necessary to make the proxy material not false or misleading. The Supreme Court has defined materiality in Mills v. Electric Auto-Lite Co., 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed. 2d 593 (1970), in which it said that the determination that a misstatement or omission is material "indubitably embodies a conclusion that the defect was of such a character that it might have been considered important by a reasonable shareholder who was in the process of deciding how to vote." 396 U.S. at 384, 90 S.Ct. at 621. The defect in the proxy material must not be "trivial" or largely "unrelated" to the issue placed before the shareholder, but rather must have a "significant *propensity* to affect the voting process." *Id.* The defects plaintiff alleges in the Standard Brands proxy statement do not meet this standard.

At the time the proxy statement was prepared, Andersen had 94 offices throughout the world, with 749 partners and 10,577 employees. One of the Four Seasons defendants was an Andersen partner at the time of the allegedly unlawful activities in 1968 and 1969, another became a partner shortly before the indictments were handed up, and the third was an employee. All three worked out of the Oklahoma City office, which has never had anything to do with Standard Brands' audits. Andersen's work on the Standards Brands account has been performed exclusively by its New York office. In addition, whatever responsibilities they may once have had in Oklahoma City, the three indicted employees have been, as Standard Brands was notified before it issued the proxy material, relieved of all duties.

It is always extremely difficult for a court to determine with precision what effect a misstatement or omission might have on a reasonable shareholder in the process of deciding how to vote. We are convinced, however, that the nexus between the three Oklahoma City employees and Andersen's fitness to be Standard Brands' independent auditors is so remote as to render the fact that the indictments were handed up quite unrelated to the substance of the proposal before the shareholders.

Plaintiff attempts to analogize the set of facts in this case to cases in which the failure to disclose pending litigation against officers and directors has been held to constitute the omission of material facts. The analogy is inapposite. The disclosure of pending litigation against corporate officers and directors, whether they are seeking shareholder approval of a transaction, or are seeking re-election to the Board of Directors, is of great importance because the officers and directors "collectively are the captain of the [corporate] ship." Rafal v. Geneen, 1972–73 CCH Fed.Sec.L.Rep. ¶ 93,505 at 92,441 (E.D.Pa.1972). Full disclosure of pending litigation is especially important if it has any bearing on the competence or motives or integrity of the soliciting directors. Therefore, in Robinson v. Penn Central Co., 336 F. Supp. 655 (E.D.Pa.1971), we held that a proxy statement seeking approval of a refinancing plan and the re-election of

directors omitted to state material facts and was false and misleading because it failed to disclose that the former directors who negotiated the plan had been named as defendants in lawsuits charging them with fraud and breach of fiduciary duty, and that two members of the Board soliciting the proxies had been elected by the directors-turned-defendants. These facts would undoubtedly affect a shareholder's judgment of the source and substance of the proposals and had to be disclosed if the shareholders could reasonably be expected to make an informed, intelligent decision. A similar rationale lay behind the court's conclusion in Beatty v. Bright, 318 F. Supp. 169 (S.D.Iowa 1970), that a shareholder's vote on a sale of corporate assets might be influenced if he knew that the directors proposing the sale had been named as defendants in lawsuits charging them with fraud, self-dealing, conflict of interest and mismanagement.

There is, however, a difference between the cases involving the disclosure of pending litigation against officers and directors and this lawsuit. The difference is not that the function of the independent auditor is less significant than that of the director, and therefore pending litigation against the auditor is less important to the shareholder. On the contrary, the auditor, as the counter and guardian of the corporate coins, plays a particularly important role and the consequences of his dishonesty or incompetence can be disastrous. The difference is rather in the connection between the undisclosed facts and the shareholder's decision on how to cast his vote. Rafal, Robinson and Beatty all involved facts about pending litigation which directly related to the integrity or judgment of the directors of the corporation soliciting the proxies, and therefore went to the heart of the proposals. The connection between the indictment of the three Oklahoma City employees is quite different. The indictment of three employees in an Andersen office which has had no connection with the Standard Brands audit has only the most tenuous relationship to the shareholders' selection of the corporation's independent auditors. Had Andersen employees who had worked on or might in the future be assigned to the Standard Brands audit been indicted, the existence of that litigation might well be a material fact which must be disclosed to the shareholders. However, the undisclosed fact here is so unrelated to the corporate integrity or fitness of Andersen that we conclude its omission would not have a "significant *propensity* to affect the voting process." [3]

The naming of Andersen as an unindicted co-conspirator is of no significance for the purposes of § 14(a). Whatever the outcome of the Four Seasons litigation, the government has no obligation to prove anything against Andersen and there will be no determination of Andersen's guilt or innocence since it is not charged with committing any unlawful acts. The naming of a party as an unindicted co-conspirator is often more a means of taking advantage of the rules of evidence in conspiracy prosecutions than it is an intimation of guilt. *See* Note, "Developments in the Law: Criminal Conspiracy," 72 Harv.L. Rev. 920, 983–88 (1959). To inform the shareholders of Andersen's role in the Four Seasons indictments would convey no information relevant to their vote on the proposal before them and would probably serve only to confuse.

In order for plaintiff's § 20 claim to stand, there must be a violation of § 14(a) and Rule 14a–9. Since we have determined that there has been no such violation, the § 20 claim fails. We shall therefore enter summary judgment in favor of the defendant Standard Brands and against plaintiff.

---

3. We reach this conclusion despite plaintiff's reliance on an Andersen recruiting booklet which speaks in glowing terms of Andersen's "one-firm concept." The other evidence presented in this case is more convincing than general, puffing statements directed at prospective employees.