**Theodore KOSS and Koss Securities Corporation, Plaintiffs,**

**v.**

**SECURITIES AND EXCHANGE COMMISSION OF the UNITED STATES, Defendant.**

**No. 73 Civ. 2619.**

United States District Court, S. D. New York.

Oct. 17, 1973.

OPINION

BAUMAN, District Judge.

Plaintiffs, an underwriter and its president, seek a preliminary injunction restraining the Securities and Exchange Commission from "directing" issuers to include in their offering circulars statements that the plaintiffs are respondents in an administrative proceeding pending before the Commission. Defendant now moves to dismiss pursuant to Rule 12(b) of the Federal Rules and for summary judgment pursuant to Rule 56. For the reasons that follow, I conclude that the court is not confronted with a justiciable controversy and the motion for summary judgment is, accordingly, granted.

I.

The facts are basically undisputed. Theodore Koss and his wife are the sole shareholders as well as sole directors of the corporate plaintiff, a registered broker-dealer. On September 14, 1971 the SEC launched an administrative proceeding against Koss Securities, Koss, and ten others alleging that the respondents had violated the registration requirements of the Securities Act of 1933 in selling a security and had made false and misleading statements in the process. Certain of the respondents moved for more definite statements and these were filed by the Division of Trading and Markets on November 22, 1971. Whether as a result or not, thereafter, eight of the twelve respondents successfully negotiated settlement.

On April 16, 1973 Koss Securities and Koss, having waited some two years, not unreasonably moved the Commission for a dismissal of the administrative proceeding for failure to prosecute. Thus having been roused, the Commission staff arranged a meeting on May 7 at which settlement was unsuccessfully explored and where counsel claims to have been assured by the staff that his motion would be answered by May 11.[1]

Turchin & Weissberg, New York City, for plaintiffs.

Jacob H. Stillman, Asst. Gen. Counsel, Securities and Exchange Commission, Washington, D. C. (Frederick L. White, Washington, D. C., of counsel); William D. Moran, Regional Administrator, New York City; for defendant.

1. SEC Minute Order, Koss Securities and Theodore Koss, AP File 3–3253, June 25, 1973, at 4–5.

For no ascertainable reason the Commission's staff failed to respond until June 15,[2] two days after plaintiffs had instituted this action.

Although all this foot-dragging was going on in connection with the administrative proceeding, the staff was not oblivious to plaintiffs. Between February 23 and May 21, 1973 six proposed issuers intending to use Koss Securities as underwriter[3] for Regulation A offerings[4] received comment letters from the SEC's Regional Offices[5] written by staffers responsible for reviewing the offering circulars. In essence, the letters requested[6] that the circulars be amended to disclose: (1) that plaintiffs were respondents in an SEC administrative proceeding, and (2) the nature of the (as yet unproven) charges.[7] As was

2. The Commission's Rule of Practice 12(c), 17 C.F.R. § 201.12(c) (1973), specifies that an answer to a motion be made within five days.

3. The proposed issuers were National Teacher Placement Bureau, SEC File No. 24C-3516; Multi-Leasing Corp., SEC File No. 24W-3115; UMC International Inc., SEC File No. 24NY-7751; Times of Israel, Inc., SEC File No. 24NY-7811; American Multi-Lert, SEC File No. 24W-3134; Harbor Enterprises, SEC File No. 24NY-7740. Letter of Ruth D. Appleton, Chief, Branch of Small Issues, to N. George Turchin, Esq., June 25, 1973. Two proposed issuers were subsequently furnished similar comments orally. Id.

4. Regulation A consists of Commission Rules 251 to 263, 17 C.F.R. § 230.251-63 (1973).

5. Affidavit of Theodore Koss, June 8, 1973, at 3-4.

6. The staff's hortatory language, specifically, was "please make the appropriate changes." See note 7 infra.

7. The relevant language of the letters is as follows:
"Gentlemen:
With respect to the above-captioned file, please make the appropriate changes in the following sections of the offering circular; Front Cover Page under This Offering Involves, Risk Factor section and the Underwriting section.
A. *Front Cover Page—This Offering Involves*
Please add as the first paragraph of this section the following:
"The Securities and Exchange Commission's order for public proceeding dated September 14, 1971 alleging serious violations of the federal securities laws by the underwriter".
See Risk Factor section, paragraph 1.
B. *Risk Factor Section*
Please add the following risk factor and list it as the first paragraph of that section:
"The Securities and Exchange Commission's order for public proceeding dated September 14, 1971 asserting that T. Koss and Koss Securities, among other respondents, 'During the period from on or about October 1, 1969 to date, . . . wilfully violated and wilfully aided the abetted violations of Sections 5(a) and 5(c) of the Securities Act of 1933 in connection with the offer and sale of the common stock of Spectrum, Ltd. when no registration statement was in effect as to such securities'."
The Order also charges violations of the anti-fraud provisions of the securities laws during the same time period by both Koss and T. Koss, together with five other respondents. They are charged with having "wilfully violated and wilfully aided and abetted violations of Section 17(a) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5 thereunder in that, in connection with the offer to sell, sale and purchase of the common stock of Spectrum, Ltd. said persons, directly and indirectly, singly and in concert with each other and with other persons . . . employed devices, schemes and artifices to defraud, made untrus [sic] statements of material facts and omitted to state material facts" with respect to several generally identified aspects of the business of Spectrum, Ltd. and its management and market activity.
The Order also asserts that for the same time period Koss failed reasonably to supervise an employee or employees subject to its supervision in violation of Section 15(b)(5) (E) of the Exchange Act.
If Theodore Koss and Koss Securities Corporation are found to have violated the sections alleged in the Commission's order of proceeding the Administrative Law Judge could exact sanctions ranging from a mere censure to a complete bar of Theodore Koss from associating with any broker-dealer and revocation of Koss Securities Corporation's registration as a broker-dealer.
The subject proceeding is still pending.
C. *Underwriting*
Summarize the above noted proceeding and the possible sanctions stemming therefrom and also parenthetically refer the reader to both the Front Cover Page and the Risk Factor section.
 *   *   *   *   *
Please file this material in amendatory form.
                  Sincerely yours,"

utterly foreseeable, two of the issuers found it desirable to find another underwriter.[8]

The damage having been done and this suit having been brought, on June 25 the Chief of the Branch of Small Issues of the Division of Corporate Finance, pursuant to an order ·of the Commission,[9] wrote plaintiffs' attorney saying that the staff's comment letter had been withdrawn and that no disclosure of the administrative proceeding would be required in any subsequent offering circulars.[10] But, the letter went on, Koss would be "requested" by the appropriate regional offices to inform the issuer of any Regulation A offering naming Koss as underwriter:

"a) of the pending public administrative proceeding and the allegations relating to Koss; b) that the responsibility for determining the materiality of the pending public administrative proceeding is that of such issuer; c) that the burden of determining whether or not to disclose such proceeding is that of such issuer; d) that such burden cannot be shifted to the Commission or the staff of the Commission; e) that disciplinary action against Koss during the offering might result in suspension of the exemption for the offering; and f) that the issuer should advise the staff in writing that it has received such advice from Koss and what the issuer's position is with respect to disclosure of these matters." [11]

Evidentiary hearings before an Administrative Law Judge began July 9

and ended July 19, for which the proposed findings and conclusions of the Division of Enforcement were to have been filed by August 31, 1973.

Plaintiffs contend that the staff comment letters exceeded the SEC's statutory powers under 15 U.S.C. §§ 77g and 77j and schedule A of § 77aa and that the SEC's delay is within the scope of 5 U.S. C. § 706(1). Furthermore, it is contended that the comment letters violate the due process clause of the Fifth Amendment in that they reflect a prejudgment of the issues of law and fact presented in the administrative complaint and resulting in damage to Koss Securities' reputation and business. Koss alleges jurisdiction to enjoin these alleged abuses under 28 U.S.C. § 1331 and 28 U.S.C. § 1337.

## II.

■ The threshold question is the timeliness of judicial review in the factual context of this case,—whether, in short, the relationship of Koss with the SEC has developed to such a point that judicial intervention is appropriate. This assessment of the utility of judicial action, or of "ripeness", serves to prevent courts from entering abstract debates about agency policies or reviewing agency decisions until they have been "formalized" and have caused concrete effects upon the challenging parties. Abbott Laboratories v. Gardner, 387 U. S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967).

■ The question of whether judicial review is apposite to this case is not an-

---

8. Affidavit of Theodore Koss, June 8, 1973, at 8.

9. The letter from the Division of Corporate Finance was written pursuant to the order of the Commission contained in its "Minute Order", issued June 25, 1973. The Commission stated that it neither approved nor disapproved of the staff's comments but viewed them as raising "significant questions of administrative policy" concerning disclosure presently before the SEC.

10. Letter of Ruth D. Appleton, Chief, Branch of Small Issues, to N. George Turchin, June 25. 1973.

11. Id. The letter concluded:
"The Commission presently has under consideration the broad question of disclosure of litigation involving underwriters, accountants, attorneys and other professionals and has not as yet made a determination of that broad question.
Should Koss or any person associated with Koss be associated with such issuer in any capacity other than as an underwriter, the question of disclosure of the pending public administrative proceeding would depend on the particular factual circumstances."

swered merely by the label—"comment letter" or "order"—which the SEC may place upon its own or its staff's communication, but rather by a functional appraisal of the consequences of the actions which plaintiffs may reasonably expect. Independent Broker-Dealers' Trade Association v. SEC, 142 U.S.App. D.C. 384, 442 F.2d 132, 140–141, cert. denied, 404 U.S. 828, 92 S.Ct. 63, 30 L. Ed.2d 57 (1971). Thus, I must evaluate "both the fitness of the issues for judicial decision and the hardship to the parties of withholding court decision." [12] Abbott Laboratories, 387 U.S. at 149, 87 S.Ct. at 1515.

The simple fact is that the comment letters issued by the SEC's Regional Office staff members were withdrawn at the direction of the Commission in its Minute Order of June 25, 1973. I am not, however, persuaded that the Commission has succeeded in mooting plaintiffs' claims against its staff by apparently granting the specific relief against the staff comment letters sought in the complaint. Plaintiffs' counsel neglected to amend the complaint after the comment letters were withdrawn and the Minute Order apparently shifted the burden of disclosure from the issuers to the underwriter, and consequently, review of the Minute Order is not presently before me. Nonetheless, plaintiffs' apparently narrow request for relief looks to future activities by the SEC staff as well as to past derelictions and therefore the June 25 action does not moot plaintiffs' action, which I construe to be one to enjoin the SEC staff from subsequently issuing comment letters similar to those withdrawn.

The Commission's treatment of its staff's action indicates that internal agency checks are available to stop untoward staff conduct. Cf. McKart v. United States, 395 U.S. 185, 193, 89 S. Ct. 1657, 23 L.Ed.2d 194 (1969); Myers v. Bethlehem Shipbuilding Corp., 303 U. S. 41, 50–51, 58 S.Ct. 459, 82 L.Ed. 638 (1938). The Commission is obviously prepared to exercise its own supervisory powers in scrutinizing staff errors as sharply as would this court and the existence of this careful scrutiny in the context of an ongoing administrative proceeding obviates the need for judicial review of SEC staff activity. Cf. Swift & Co. v. Wickham, 230 F.Supp. 398 (S.D. N.Y.1964), aff'd, 364 F.2d 241 (2nd Cir. 1966), cert. denied, 385 U.S. 1036, 87 S. Ct. 776, 17 L.Ed.2d 683 (1967).

Another way of categorizing the events in which Koss and the SEC staff participated is that they constituted only "informal" agency activity and did not result in any definitive ruling which a court might review. In Helco Products Co. v. McNutt, 78 U.S.App.D.C. 71, 137 F.2d 681 (1943), appellant desired to ship white poppy seeds dyed blue in interstate commerce and wrote to the Food and Drug Administration to obtain its opinion of the legality of such a scheme. After the Commissioner responded that such a product would be considered to be illegally adulterated, the manufacturer sued for a declaratory judgment. In holding that no actual controversy within the meaning of the Declaratory Judgment Act, see 28 U.S.C. § 2201 (1970), was present, the court enumerated the factors which made the case nonjusticiable. Since the Food and Drug Commissioner could not institute prosecution himself but could only recommend action to the Attorney General, his opinion of illegality constituted much less than a threat of enforcement. Furthermore, prior to bringing suit the manufacturer had presented the Commissioner with only a hypothetical state of facts upon which to opine; the conclusion he reached was "no more than an advisory opinion" and no steps were taken to put it into effect, 137 F.2d at 684.

The same advisory quality characterizes the SEC staff's comment letters concerning Koss. As the revocation of the comment letters by the Division of Corporate Finance indicates, the staff's comments did not represent the opinion

12. Cf. Abbott Laboratories v. Celebrezze, 352 F.2d 286 (3rd Cir. 1965).

of the SEC itself and thus, stopping far short of an actual threat of SEC enforcement, constituted only the informal staff advice contemplated by 17 C.F.R. § 202.1(d) (1973). Finally, in one respect the facts of the present case represent an even stronger argument for nonjusticiability than did *Helco*. There no administrative agency was empowered to conduct evidentiary hearings to determine the applicability of food and drug regulations and the court's finding of nonjusticiability only postponed judicial scrutiny.[13] As I have noted, in the present case the SEC itself is capable of resolving factual issues.

Thus, the two elements of unripeness set forth in *Abbott Laboratories*, supra, are present here: the issues are unfit for judicial review because staff comment letters do not represent the opinion of the Commission itself, and no hardship will be imposed on Koss if judicial action is withheld because the SEC does not appear reluctant to oversee its staff's activities throughout the administrative proceeding. See generally National Automatic Laundry & Dry Cleaning Council v. Shultz, 143 U.S. App.D.C. 274, 443 F.2d 689 (1971); Brandenfels v. Day, 114 U.S.App.D.C. 374, 316 F.2d 375 (1963); Richfield Oil Corp. v. United States, 207 F.2d 864, 870 (9th Cir. 1953); Midwest Coast Transport v. United States, 125 F.Supp. 557 (D.S.D.1954); cf. Medical Committee for Human Rights v. SEC, 139 U.S. App.D.C. 226, 432 F.2d 659, 669, vacated as moot, 404 U.S. 403, 92 S.Ct. 577, 30 L.Ed.2d 560 (1970).

### III.

The final question I must resolve is whether the SEC's and its staff's activities concerning Mr. Koss and Koss Securities were *ultra vires*. See Independent Broker-Dealers' Trade Association v. SEC, *supra*, 442 F.2d at 143, 145.

Koss Securities' quarrel with the SEC, in which the comment letters originated, concerned small offerings which are exempt from registration under the 1933 Act. Despite the lack of registration, however, the SEC does not eschew supervision of Regulation A filings, for Rule 256 of the Regulation, 17 C.F.R. 230.256 (1973) requires that an offering circular containing information about the offering and the issuer be filed with the Commission prior to the commencement of the offering and that it be distributed to offerees and purchasers of the securities. Deficiencies in offering circulars or fraudulent conduct of a Regulation A offering may evoke several responses from the Commission: administrative action suspending the Regulation A exemption, see Rule 261, 17 C.F.R. 230.261 (1973); commencement of a civil action to enjoin violations of statutes and rules; and submission of evidence to the Department of Justice for possible criminal prosecution, see 15 U.S.C. §§ 77t(b), 78u(e) (1970). Supplementing these options is the SEC itself, including "informal advice" given by its staff to those dealing with the Commission, 17 C.F.R. § 202.1(d).

One of the defects in an offering statement which may provoke Commission response is the misstatement or omission of "a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . . ." 17 C.F.R. § 230.261(a)(2) (1973). The Commission did not abuse or exceed its powers in authorizing the staff to require the disclosures the June 25 letter from its Division of Corporate Finance required Koss to make to proposed issuers of securities. The fact that an administrative proceeding is pending against the underwriter of securities is material to the purchaser of securities and, a fortiori, to their issuer. See Lyman v. Standard Brands, 364 F. Supp. 794 (E.D.Pa.1973); Boruski v.

13. See 3 K. Davis, Administrative Law Treatise § 21.08, at 189 (1958).

Division of Corporate Finance, 321 F. Supp. 1273, 1276 (S.D.N.Y.1971); Beatty v. Bright, 318 F.Supp. 169 (S.D.Iowa 1970); Rafal v. Geneen, [1972–1973 Transfer Binder] CCH Fed.Sec.L.Rep. ¶ 93,505 (E.D.Pa.1972); see also Tabby's International, Inc. v. SEC, 479 F.2d 1080 (5th Cir. 1973). Likewise, no other action taken by the Commission in the course of its dealings with Koss has been *ultra vires*. The SEC staff's initial comments were authorized by 17 C. F.R. § 202.1(d) and by § 230.261(a)(2); the propriety or tact of those comments is, for the reasons outlined in part II of this opinion, not judicially reviewable. Furthermore, any harm done to plaintiffs by the comment letters does not outweigh the gravity of the SEC's role in assuring full disclosure and fair dealing in securities. See F.T.C. v. Cinderella Career & Finishing Schools, Inc., 131 U.S.App.D.C. 331, 404 F.2d 1308, 1316 (D.C.Cir.1968); Hughes, Inc. v. F.T.C., 61 App.D.C. 386, 63 F.2d 362 (1933).[14]

### IV.

Insofar as this case is not ripe for judicial review and the SEC's activities therein have not been *ultra vires*, I lack jurisdiction to consider the merits of plaintiffs' claims. Accordingly, the defendant's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure is granted, and the action is dismissed.

So ordered.

14. The remaining arguments of the parties may be disposed of briefly. The SEC argued that, under the rule expounded in Blackmar v. Guerre, 342 U.S. 512, 72 S.Ct. 410, 96 L.Ed. 534 (1952), it could not be sued *eo nomine*—in short, that plaintiffs' complaint is fatally defective because it fails to name the individual Commissioners as defendants. Insofar as the Commissioners, if they are deemed essential parties to the lawsuit, may be readily joined under Federal Rule 19, this objection is frivolous.

The SEC also argued that plaintiffs lacked standing to challenge the staff comment letters because the letters were addressed to proposed issuers and not to plaintiffs. The adverse effect of the comment letters upon plaintiffs is indubitable, see FCC v. Sanders Bros. Radio Station, 309 U.S. 470, 60 S.Ct. 693, 84 L.Ed. 869, as is their standing to litigate.